## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN MICHAEL, on behalf of herself and all others similarly situated, | ) ) ) | Case No. 16-CV-7238 |
| Plaintiff, | ) ) | Judge Amy J. St. Eve |
| v. | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| CITIMORTGAGE, INC. and SAFEGUARD PROPERTIES, LLC, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CITIMORTGAGE, INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, STRIKE THE CLASS ALLEGATIONS

Lucia Nale
Debra Bogo-Ernst
Stephen J. Kane
Michael H. Bornhorst
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Counsel to Defendant CitiMortgage, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.     The Complaint Fails To Plead Compliance With The Notice-And-Cure Requirement ............................................................................................................... 4

II.    The Complaint Fails To State A Claim ...................................................................... 6

    A.    The Complaint Fails To State A RICO Claim Under 18 U.S.C. § 1962(c) ........... 6

        1.    Plaintiff Lacks Standing To Assert A RICO Claim ................................... 6

        2.    The Complaint Does Not Adequately Allege An Enterprise ................................................................................................... 6

        3.    The Complaint Does Not Allege "Conduct" Of An Enterprise ................................................................................................... 8

        4.    The Complaint Does Not Adequately Allege Racketeering Activity ........................................................................................... 9

    B.    The Complaint Fails To State A RICO Claim Under 18 U.S.C. § 1962(d) ......... 12

    C.    The Complaint Fails To State A Claim Under The FDCPA ............................. 12

    D.    The Complaint Fails To State A Claim For Breach Of Contract ....................... 13

    E.    The Complaint Fails To State A Claim For Fraud Or Under The CFA ............. 17

III.    If The Complaint Is Not Dismissed, The Class Allegations Should Be Stricken ............ 18

    A.    The Putative Classes Do Not Satisfy Rule 23(a) ................................................ 19

    B.    The Putative Classes Do Not Satisfy Rule 23(b) ................................................ 21

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Campbell,*
2006 WL 146208 (M.D. Fla. Jan. 18, 2006) ............................................................. 9

*Allen v. JP Morgan Chase Bank, N.A.,*
2016 WL 1029334 (S.D. Miss. Mar. 14, 2016) ........................................................ 5

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .............................................................................................. 23

*Armenian Church of Lake Bluff v. Dep't of Revenue,*
956 N.E.2d 479 (Ill. App. Ct. 2011) ................................................................. 3, 21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................ 3

*Avon Hardware Co. v. Ace Hardware Corp.,*
998 N.E.2d 1281 (Ill. App. Ct. 2013) .................................................................. 18

*Avritt v. Reliastar Life Ins. Co.,*
615 F.3d 1023 (8th Cir. 2010) .............................................................................. 22

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................ 4

*Benner v. Bank of Am.,*
917 F. Supp. 2d 338 (E.D. Pa. 2013) .............................................................. 14, 15

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) .............................................................................. 23

*Buonomo v. Optimum Outcomes, Inc.,*
301 F.R.D. 292 (N.D. Ill. 2014) ........................................................................... 18

*Burton v. Nationstar Mortg., LLC,*
2014 WL 5035163 (E.D. Cal. Oct. 8, 2014) ......................................................... 20

*Carr v. Tillery,*
591 F.3d 909 (7th Cir. 2010) .................................................................................. 9

*Cirino v. Bank of Am., N.A.,*
2015 WL 3669078 (C.D. Cal. Feb. 10, 2015) ........................................................ 7

*CitiMortgage, Inc. v. Michael*,
No. 2014 CH 1431 ................................................................................................3

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ...........................................................................6, 7

*Evans v. City of Chi.*, 434 F.3d 916 (7th Cir. 2006), *overruled on other grounds*,
*Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)......................................................6

*First Nat'l Bank v. Achilli*,
301 N.E.2d 739 (Ill. App. Ct. 1973) ...................................................................11

*Freedom Mortg. Corp. v. Burnham Mortg., Inc.*,
720 F. Supp. 2d 978 (N.D. Ill. 2010) ....................................................................8

*Giotta v. Ocwen Financial Corp.*, 2016 WL 4447150 (N.D. Cal. Aug. 24, 2016),
*appeal pending*, No. 16-16665 (9th Cir.)........................................................4, 5, 12

*Greenberger v. Geico Gen. Ins. Co.*,
631 F.3d 392 (7th Cir. 2011) ...............................................................................17

*Higley v. Flagstar Bank, FSB*,
910 F. Supp. 2d 1249 (D. Or. 2012) .....................................................................5

*Hill v. Nationstar Mortg., LLC*,
2015 WL 4478061 (S.D. Fla. July 6, 2015)........................................................4, 5

*Hill v. Wells Fargo Bank*,
946 F. Supp. 2d 817 (N.D. Ill. 2013) ..................................................................18

*Jefferson v. Ingersoll Int'l, Inc.*,
195 F.3d 894 (7th Cir. 1999) ...............................................................................22

*Johnson v. Countrywide Home Loans, Inc.*,
2010 WL 5138392 (E.D. Va. Dec. 10, 2010) .........................................................5

*Kane v. Bank of Am.*,
2014 WL 4198295 (N.D. Ill. Aug. 25, 2014) .......................................................13

*Kaplan v. Pomerantz*,
132 F.R.D. 504 (N.D. Ill. 1990)...........................................................................21

*Lemon v. Int'l Union of Operating Eng'rs*,
216 F.3d 577 (7th Cir. 2000) ...............................................................................22

*Majchrowski v. Norwest Mortg., Inc.*,
  6 F. Supp. 2d 946 (N.D. Ill. 1998) ....................................................................15

*Mann v. Chase Manhattan Mortg. Corp.*,
  2002 WL 32157516 (D.R.I. Mar. 7, 2002) .......................................................19

*McArdle v. Peoria Sch. Dist. No. 150*,
  705 F.3d 751 (7th Cir. 2013) .............................................................................17

*McComb v. Seestadt*,
  417 N.E.2d 705 (Ill. App. Ct. 1981) ..................................................................10

*McKenzie v. Wells Fargo Bank*,
  931 F. Supp. 2d 1028 (N.D. Cal. 2013) .............................................................16

*Mendez v. Bank of Am. Home Loans Servicing*,
  840 F. Supp. 2d 639 (E.D.N.Y. 2012) ...............................................................14

*Menominee Indian Tribe v. Thompson*,
  161 F.3d 449 (7th Cir. 1998) ...............................................................................3

*Michael v. F.D.I.C.*,
  687 F.3d 337 (7th Cir. 2012) .............................................................................21

*Modupe v. CitiMortgage, Inc.*,
  2012 WL 5197389 (N.D. Ill. Oct. 19, 2012).....................................................13

*Mut. Life Ins. Co. v. Phinney*,
  178 U.S. 327 (1900)............................................................................................11

*Randazzo v. Harris Bank Palatine, N.A.*,
  104 F. Supp. 2d 949 (N.D. Ill. 2000) ...........................................................11, 18

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)..............................................................................................8

*Roberts v. Cameron-Brown Co.*,
  556 F.2d 356 (5th Cir. 1977) .............................................................................16

*Ruth v. Triumph P'ships*,
  577 F.3d 790 (7th Cir. 2009) .............................................................................12

*Salinas v. United States*,
  522 U.S. 52 (1997)..............................................................................................12

*Schlosser v. Fairbanks Capital Corp.*,
   323 F.3d 534 (7th Cir. 2003) ..............................................................12

*Slaney v. Int'l Amateur Athletic Fed'n*,
   244 F.3d 580 (7th Cir. 2001) ................................................................4

*Sotomayor v. Deutsche Bank Nat'l Trust Co.*,
   2016 WL 3163074 (S.D. Fla. Feb. 5, 2016) ........................................5

*Stitt v. Citibank, N.A.*,
   2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ................................1, 6, 7, 8

*Stitt v. Citibank, N.A.*,
   2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ............................ *passim*

*Stitt v. Citibank, N.A.*,
   2016 WL 5815491 (N.D. Cal. Oct. 5, 2016).........................1, 8, 10, 11

*Stitt v. Citibank, N.A.*,
   2016 WL 5815832 (N.D. Cal. Oct. 5, 2016)............................1, 17, 18

*Stitt v. Citibank, N.A.*,
   942 F. Supp. 2d 944 (N.D. Cal. 2013) ..........................................1, 6, 18

*Stone v. Washington Mut. Bank*,
   2011 WL 3678838 (N.D. Ill. Aug. 19, 2011) .......................................21

*United Food & Commercial Workers Unions v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ................................................................9

*United States v. Leahy*,
   464 F.3d 773 (7th Cir. 2006) ................................................................9

*United States v. Turkette*,
   452 U.S. 576 (1981)...............................................................................6

*Vega v. Ocwen Fin. Corp.*,
   2015 WL 1383241 (C.D. Cal. Mar. 24, 2015).....................10, 14, 15, 19

*Vega v. Ocwen Fin. Corp.*, 2015 WL 3441930 (C.D. Cal. May 28, 2015), *appeal
   pending*, No. 15-55885 (9th Cir.)........................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................19, 22

*Walker v. Countrywide Home Loans,*
    121 Cal. Rptr. 2d 79 (Ct. App. 2002) .........................................................................14, 15, 19

*Water Pipe Extension, Bureau of Eng'g Laborers' Local 1092 v. City of Chi.,*
    741 N.E.2d 1093 (Ill. App. Ct. 2000) ...................................................................................14

**Statutes and Rules**

15 U.S.C. § 1692(e) ...............................................................................................................13

15 U.S.C. § 1692(f) ...............................................................................................................13

15 U.S.C. § 1692a ............................................................................................................12, 13

18 U.S.C. § 1961(4) .................................................................................................................6

18 U.S.C. § 1962(c) ..............................................................................................................6, 8

18 U.S.C. § 1962(d) ...............................................................................................................12

Fed. R. Civ. P. 9(b) .............................................................................................................4, 11

Fed. R. Civ. P. 11(b)(3) .........................................................................................................12

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3

Fed. R. Civ. P. 19 ...................................................................................................................21

Fed. R. Civ. P. 23 ...................................................................................................................19

Fed. R. Civ. P. 23(a) .........................................................................................................19, 21

Fed. R. Civ. P. 23(a)(2) .........................................................................................................19

Fed. R. Civ. P. 23(a)(3).........................................................................................................20

Fed. R. Civ. P. 23(a)(4).........................................................................................................20

Fed. R. Civ. P. 23(b) ..............................................................................................................21

Fed. R. Civ. P. 23(b)(1)..........................................................................................................21

Fed. R. Civ. P. 23(b)(2)..........................................................................................................22

Fed. R. Civ. P. 23(b)(3)......................................................................................................22, 23

## TABLE OF AUTHORITIES
(continued)

Page

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................................................... 18

**INTRODUCTION**

Plaintiff Susan Michael and her husband George Michael defaulted on their $4 million mortgage from CitiMortgage, Inc. ("Citi") six years ago. Plaintiff filed this putative class action challenging fees that Citi charged for monthly property inspections while she was in default—typically costing $12-$15 each—as her mortgage expressly allows. Plaintiff's suit is similar to a putative class action filed against Citi in the Northern District of California. In that case, the court: (1) twice held that plaintiffs failed to state claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944 (N.D. Cal. 2013) ("*Stitt I*"), and *Stitt v. Citibank, N.A.*, 2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ("*Stitt II*"); (2) denied class certification, *Stitt v. Citibank, N.A.*, 2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ("*Stitt III*"); (3) granted summary judgment for Citi on plaintiffs' remaining fraud and unjust-enrichment claims, *Stitt v. Citibank, N.A.*, 2016 WL 5815491 (N.D. Cal. Oct. 5, 2016 ("*Stitt IV*"); and (4) denied plaintiffs' motion for attorneys' fees. *Stitt v. Citibank, N.A.*, 2016 WL 5815832 (N.D. Cal. Oct. 5, 2016) ("*Stitt V*"). Plaintiff's claims should be rejected here too.

***First***, Plaintiff's mortgage required her to give Citi notice and an opportunity to cure any errors before suing. The Complaint does not allege that Plaintiff provided this notice. Courts have repeatedly dismissed claims challenging property-inspection fees where plaintiffs failed to plead compliance with the mortgage's notice-and-cure provision. The Complaint here should be dismissed in its entirety for the same reason.

***Second***, as in *Stitt*, the Complaint fails to state a claim under RICO (Counts I and II). Plaintiff lacks standing to assert a RICO claim because the Complaint does not allege that Plaintiff actually paid the challenged inspection fees. The Complaint also fails to allege the basic elements of a RICO claim. Among many other flaws, the Complaint alleges a routine contract

dispute, not actionable fraud that could support a RICO claim.

**Third**, the Complaint fails to state a claim under the Fair Debt Collection Practices Act ("FDCPA") (Count III). As Plaintiff's original lender, Citi is not a "debt collector" subject to the FDCPA. Even if it were, the Complaint fails to allege substantive violations of the FDCPA.

**Fourth**, the Complaint fails to state a claim for breach of contract (Count IV). Plaintiff's mortgage expressly allows Citi to charge Plaintiff for property inspections upon default. To the extent that these charges are subject to a reasonableness test, courts have repeatedly held that monthly inspections of properties subject to delinquent loans are reasonable.

**Fifth**, the Complaint fails to state claims for common-law fraud (Count V) or purported violations of the Illinois Consumer Fraud and Deceptive Practices Act ("Consumer Fraud Act") (Count VI). As with Plaintiff's RICO claim, the Complaint has not adequately alleged any fraudulent misrepresentation or concealment distinct from the alleged breach of contract.

**Finally**, if the Complaint is not dismissed, its class allegations should be stricken. Plaintiff seeks to represent putative nationwide and Illinois classes consisting of certain delinquent borrowers who were charged for property inspections. In *Stitt III*, the court declined to certify classes asserting substantially similar claims. For good reason: determining whether a property-inspection fee was proper requires an endless series of individual inquiries into each borrower's mortgage, applicable servicing guidelines (if relevant), and each borrower's loan file. The class allegations should be stricken now so that the parties do not waste significant time and expense on discovery into purported classes that could never be certified.

## BACKGROUND

In 2005, Susan and George Michael obtained a $4 million mortgage loan from Citi on a five-acre residential property in Lake Bluff, Illinois. *See* Declaration of Stephen J. Kane ("Kane

Dec."), Ex. A at 1-2[1]; *Armenian Church of Lake Bluff v. Dep't of Revenue*, 956 N.E.2d 479, 482 (Ill. App. Ct. 2011). The Michaels' initial monthly payment was $17,083.33. *See* Kane Dec., Ex. B ¶ 3(B). Susan Michael signed the mortgage, and both Susan and George Michael signed the note as co-borrowers. *See id.*, Ex. A at 10, Ex. B at 4. In 2010, the Michaels fell behind on their payments. Compl. ¶ 1. Citi later initiated foreclosure proceedings, which remain pending. *See CitiMortgage, Inc. v. Michael*, No. 2014 CH 1431 (Lake Cnty. Cir. Ct., 19th Judicial Cir.).

The Complaint alleges that from 2011 through 2016, Citi ordered its vendor (defendant Safeguard Properties) to conduct over 60 inspections of the Michaels' property on an approximately monthly basis. Compl. ¶¶ 6, 35. The Complaint asserts two principal theories. First, Plaintiff alleges that the inspections were "unnecessary" and "unreasonable," and that fees for the inspections violate her mortgage and loan-servicing guidelines issued by the Department of Housing and Urban Development ("HUD"). *Id.* ¶¶ 8-9. Second, Plaintiff alleges that Citi "concealed … that it was charging … delinquent borrowers repetitive property inspection fees that were not allowed under the terms of the Notes and Mortgages." *Id.* ¶ 110.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts insist upon "'specificity in pleading' … to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope'" of

---

[1] The Court may consider Plaintiffs' loan documents because they are referenced in the complaint and are central to Plaintiff's claims. *E.g.*, Compl. ¶ 22; *see Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). In addition, Plaintiffs' mortgage is judicially noticeable because it was publicly recorded with the Lake County Recorder of Deeds. *See* Kane Dec. ¶ 2 & Ex. A.

success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

Claims premised on fraud—including RICO claims—must be pled "with particularity." Fed. R. Civ. P. 9(b). A RICO plaintiff must describe the predicate acts of fraud "with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

## I. The Complaint Fails To Plead Compliance With The Notice-And-Cure Requirement.

Paragraph 20 of Plaintiff's mortgage states:

> Neither Borrower nor Lender may commence … any judicial action … that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Kane Dec., Ex. A ¶ 20. Because the Complaint does not allege that Plaintiff complied with paragraph 20, all of Plaintiff's claims should be dismissed.

Courts have repeatedly applied paragraph 20 to dismiss claims challenging property-inspection fees under a variety of legal theories where, as here, borrowers failed to plead compliance with notice-and-cure provisions in mortgages. *Giotta v. Ocwen Financial Corp.*, 2016 WL 4447150 (N.D. Cal. Aug. 24, 2016), *appeal pending*, No. 16-16665 (9th Cir.), invoked paragraph 20 to dismiss a putative class action asserting RICO, FDCPA, statutory-fraud, and common-law fraud claims. The court held that plaintiffs' claims "fall squarely within the ambit of the notice-and-cure provision" because they "arise from the property inspections … charged to Plaintiffs pursuant to the terms of the Deed of Trust." *Id.* at *4. *Hill v. Nationstar Mortgage, LLC*, 2015 WL 4478061 (S.D. Fla. July 6, 2015), similarly relied on paragraph 20 to dismiss a putative class action asserting RICO, breach-of-contract, and unjust-enrichment claims. The

court held that "regardless of the cause of actions alleged," plaintiffs' challenge to property-inspection fees was "entirely based on their mortgage contracts, specifically Paragraph 9." *Id.* at *3. *Sotomayor v. Deutsche Bank National Trust Co.*, 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016), followed *Hill* in holding that paragraph 20 "clearly applie[d]" to TILA, FDCPA, and consumer-protection claims challenging property-inspection fees.[2]

To be sure, some courts have declined to apply paragraph 20 to non-contract claims. *See Giotta*, 2016 WL 4447150, at *5 (citing cases). But here, all of Plaintiff's claims—including her non-contract claims—"arise[] from" Citi's actions "pursuant to" the mortgage or allege that Citi "breached" the mortgage. Kane Dec., Ex. A ¶ 20. Plaintiff concedes that "it is the Mortgage and Note that suppl[y] any purported legal justification or contractual warrant to charge … for alleged property inspections." Compl. ¶ 22. Indeed, Citi charged for any property inspections pursuant to paragraph 14 of the mortgage. Kane Dec., Ex. A ¶ 14 (allowing Citi to charge delinquent borrowers for "property inspection … fees"). Moreover, like *Hill*, Plaintiff bases her claims on language found in paragraph 9 of the mortgage, stating that Citi "may do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property." Compl. ¶ 24; *see id.* ¶¶ 8, 67, 71, 85, 94, 99-102, 110, 119. Paragraph 20 thus applies to each of Plaintiff's claims.

It would defeat the purpose of paragraph 20—to enable Citi to resolve disputes without litigation—if Citi were required to litigate the notice issue through discovery. Therefore, because Plaintiff does not plead compliance with paragraph 20, the Complaint should be dismissed.

---

[2] *See also, e.g.*, *Allen v. JP Morgan Chase Bank*, 2016 WL 1029334, at *2 (S.D. Miss. Mar. 14, 2016) (granting judgment on pleadings in suit alleging errors in servicing mortgage because complaint did not plead compliance with paragraph 20); *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1254 (D. Or. 2012) (dismissing claim challenging mortgage assignments because complaint did not plead compliance with paragraph 20); *Johnson v. Countrywide Home Loans*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (dismissing TILA, RESPA, FDCPA, and FCRA claims alleging wrongful foreclosure because complaint did not plead compliance with paragraph 20).

**II.     The Complaint Fails To State A Claim.**

**A.     The Complaint Fails To State A RICO Claim Under 18 U.S.C. § 1962(c).**

To have standing under RICO, Plaintiff must allege injury in her "business or property by reason of" the violation. 18 U.S.C. § 1964(c). Plaintiff also must plead the elements of a claim under 18 U.S.C. § 1962(c): "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009). The Complaint here neither adequately pleads RICO standing nor all of the elements of a claim.

**1.     Plaintiff Lacks Standing To Assert A RICO Claim.**

A plaintiff's injuries "must be 'concrete and actual,' as opposed to speculative and amorphous," to confer RICO standing. *Evans v. City of Chi.*, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Although the Complaint alleges that Citi "ordered" and Safeguard "carried out" inspections of Plaintiff's property (Compl. ¶ 35), it does not allege that Plaintiff paid any inspection fees. Plaintiff thus lacks the "concrete and actual" injury necessary to confer standing under RICO. *Cf. Stitt I*, 942 F. Supp. 2d at 954 (plaintiffs had RICO standing because they "allege they paid marked-up fees").

**2.     The Complaint Does Not Adequately Allege An Enterprise.**

An "enterprise" includes various legal entities and "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To plead an association-in-fact enterprise, Plaintiff must allege that "a group of persons" worked "together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Here, as in *Stitt*, the Complaint alleges that Citi and Safeguard formed an association-in-fact enterprise "for the common purpose of effectuating the fraud" purportedly underlying the challenged property-inspection fees. *Stitt II*, 2015 WL 75237, at *4; *see* Compl. ¶¶ 61-62, 75 (alleging that Citi and Safeguard "pursu[ed] a fraudulent scheme").

*Stitt II* held that these allegations did not adequately plead an enterprise. Plaintiffs "offered no factual allegations to render plausible their claim that the enterprise members actually knew of the alleged fraudulent common purpose." 2015 WL 75237, at *5. The complaint focused "almost exclusively" on Citi's alleged actions, lacking any "substantive allegations" about Safeguard's purported "fraudulent purpose." *Id.* Rather, plaintiffs alleged only that "Safeguard acted pursuant to [its] ordinary contractual obligation to perform inspections when Citi sent a request." *Id.* at *6. The complaint thus failed to show that Safeguard "*associated together* with the Citi defendants *for* the alleged common purpose" of defrauding borrowers. *Id.*; *see also Cirino v. Bank of Am., N.A.*, 2015 WL 3669078, at *4-*5 (C.D. Cal. Feb. 10, 2015) (dismissing RICO claim challenging property-inspection fees because complaint did not adequately plead that lender and property-inspection vendor shared common purpose).

The Complaint here suffers from the same flaws. Indeed, Plaintiff copied nearly verbatim many of the same allegations that *Stitt* found deficient. *Compare, e.g.*, Compl. ¶ 62 (alleging that Citi and Safeguard associated "for the common purpose of routinely, and repeatedly, ordering, conducting, and charging borrowers' accounts for unnecessary default-related services") *with Stitt II*, 2015 WL 75237, at *4. Also like *Stitt*, the Complaint concedes that Citi decides when to order property inspections (Compl. ¶¶ 7-8, 16-18), and that Safeguard merely conducts inspections "at [Citi's] behest." *Id.* ¶ 31. The Complaint thus alleges "the ordinary operation of a garden-variety" contract under which Safeguard provided services for Citi. *Crichton*, 576 F.3d at 400. That is far from enough to show that Citi and Safeguard shared a common purpose to fraudulently charge Plaintiff for property-inspection fees.

To be sure, the Complaint alleges that "CitiMortgage and Safeguard" established policies governing (among other things) the "programming" of Citi's property-inspection ordering

software and "statements" that supposedly do not disclose that the inspections fees are "ordered by a computer program." Compl. ¶ 65. But Plaintiff may not lump Citi and Safeguard together without identifying which defendant engaged in which conduct. *See Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 994 (N.D. Ill. 2010). Moreover, the Complaint makes clear elsewhere that **Citi** maintains the "software to order and schedule" inspections (Compl. ¶¶ 7, 17, 37) and that **Citi** sends monthly statements to borrowers (*id.* ¶¶ 8, 30, 46).

Finally, Plaintiff's theory that Citi and Safeguard shared a fraudulent purpose fails on its own terms. Although the Complaint alleges that Citi orders inspections "[t]o maximize profits" (Compl. ¶ 17), it does not allege that Citi marks up the costs of inspections. Nor could it. As *Stitt IV* noted, "Citi never marked-up property inspection fees." 2016 WL 5815491, at *1. Rather, Citi "always charged the borrower exactly what Citi is billed by the third-party vendor performing a property inspection." *Id.* By passing on Safeguard's charge to borrowers, Citi could at best recover its costs. Plus, the Complaint does not allege that Safeguard has any interest in whether borrowers reimburse Citi for the cost of inspections. Accordingly, Citi and Safeguard could not have shared a purpose to defraud borrowers in an attempt to "maximize profits." *See Stitt II*, 2015 WL 75237, at *4 n.3 (absent mark-ups by Citi, "vendors such as Safeguard … would be the only entities that could directly profit from conducting the allegedly unnecessary inspections").

### 3. The Complaint Does Not Allege "Conduct" Of An Enterprise.

Plaintiff also must allege that defendants conducted or participated, "directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). The conduct in an enterprise must be distinct from defendants' individual conduct, such that Citi and Safeguard "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

*Stitt II* found that because plaintiffs failed to allege an association-in-fact enterprise, they

8

"cannot, as a logical matter, be found to have alleged distinct enterprise conduct." 2015 WL 75237, at *6. The same is true here. The Complaint repeatedly alleges that Citi conducted its *own* affairs by ordering property inspections. *E.g.*, Compl. ¶¶ 7-8, 16-18. These allegations describe "precisely the sort of activities" that servicers use to address loans in default, "not enterprise activities separate and apart from their regular business activities." *Acosta v. Campbell*, 2006 WL 146208, at *6 (M.D. Fla. Jan. 18, 2006) (dismissing RICO claim against Citi). And although the Complaint alleges that Safeguard conducted inspections at Citi's behest (Compl. ¶ 31), that "shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of" defrauding Plaintiff. *United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013). Plaintiff thus has not adequately pled the "conduct" requirement.

### 4. The Complaint Does Not Adequately Allege Racketeering Activity.

Plaintiff bases her RICO claim on predicate acts of alleged mail and wire fraud. Compl. ¶¶ 69-75. To assert mail or wire fraud, Plaintiff must allege: "(1) a scheme to defraud; (2) an intent to defraud; and (3) use of the mails or wires in furtherance of the scheme." *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006). Plaintiff has not pled—and cannot plead—predicate acts of mail or wire fraud with particularity.

#### a. The Complaint Does Not Allege A Scheme To Defraud Involving The Use Of Fraudulent Misrepresentations.

Breach-of-contract claims "cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal." *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010). "If such renaming satisfies RICO, we shall see a wholesale migration of breach of contract suits into the federal courts … ." *Id.*; *see also id.* ("'civil RICO plaintiffs persist in trying to fit a square peg in[to] a round hole by squeezing garden-variety business

disputes into civil RICO actions'").

Plaintiff alleges that the terms of her mortgage govern the validity of property-inspection fees. *E.g.*, Compl. ¶¶ 22-25, 27, 67. Thus, as *Stitt III* observed, "the focus of this case hinges on a contract dispute. Citi's liability rises or falls on whether a fact-finder determines that a property inspection fee was authorized by the borrower's mortgage agreement." 2015 WL 9177662, at *5; *accord Stitt IV*, 2016 WL 5815491, at *4 ("This is a classic breach of contract claim inappropriately repackaged as fraud."); *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *6 (C.D. Cal. Mar. 24, 2015) (borrower's "entire grievance" "is a basic contract dispute").

Plaintiff nonetheless alleges that by billing her for property-inspection fees, Citi "implicitly represent[ed]" that the fees were valid under her mortgage. Compl. ¶ 71. *Vega* rejected a similar attempt to repackage a breach-of-contract theory under a fraud caption based on allegations that a servicer failed to disclose that inspection fees listed on account statements were "unreasonable." The court explained: "While there may be a *disagreement* regarding the terms in the mortgage agreement, and whether the property inspections were 'reasonable' under the mortgage agreement, a mere disagreement does not create additional liability." 2015 WL 1383241, at *6. "The failure to concede liability in a billing statement does not then create additional causes of action. It would be absurd for [a servicer] to print 'unnecessary property inspection' on each billing statement." *Id.*

In addition, a "statement of … law cannot form the basis of a claim of misrepresentation." *McComb v. Seestadt*, 417 N.E.2d 705, 709 (Ill. App. Ct. 1981). As *Stitt IV* held, a claim that Citi "stated implicitly" in billing statements that "it was contractually authorized to pass along" inspection fees is a legal opinion not actionable as fraud. 2016 WL 5815491, at *4. The court explained: "it is well-established that, '[a]s a rule, fraud cannot be

predicated on misrepresentations as to the legal effect of a written instrument as, for example, … a note and mortgage.'" *Id.* (quoting 37 Am. Jur. 2d Fraud & Deceit § 102); *see First Nat'l Bank v. Achilli*, 301 N.E.2d 739, 744 (Ill. App. Ct. 1973) ("A misrepresentation of the legal effect of an instrument does not constitute fraud"); *Randazzo v. Harris Bank Palatine, N.A.*, 104 F. Supp. 2d 949, 954 (N.D. Ill. 2000) ("An assertion of rights under a contract is not a factual representation at all; instead, it is an assertion regarding the legal effect of the agreement"); *Mut. Life Ins. Co. v. Phinney*, 178 U.S. 327, 342-43 (1900) (where both parties are privy to contract, one party's statement of his interpretation of contract is "expression of an opinion as to the law of the contract, and not a declaration or admission of a fact").

Third, as shown below (at 13-16), Plaintiff's mortgage authorizes property-inspection fees. Citi therefore did not commit mail or wire fraud by allegedly billing Plaintiff for the fees.

### b. The Complaint Does Not Allege A Scheme To Defraud Involving The Use Of Fraudulent Concealment.

In addition to her "implicit representation" theory, Plaintiff also alleges that Citi fraudulently concealed property-inspection fees by "camouflaging" them on monthly billing statements. Compl. ¶ 30. That allegation violates Rule 9(b) by failing to plead how Citi's billing statements supposedly hid property-inspection fees. To be sure, Plaintiff asserts that "mortgage statements were sent to the delinquent borrowers" that identified inspection fees "as 'other expenses' so as to avoid detection." *Id.* ¶ 111. But Plaintiff does not allege that **she** received a billing statement that used the term "other expenses" to charge for property inspections.

The Complaint's "other expenses" allegation is apparently a remnant of a reused complaint against a different lender. *Stitt III* explained: (1) Citi sends pre-inspection letters informing borrowers that they will be charged for monthly inspections if their default is not cured and that fees will be reflected on monthly statements as "delinquency expenses" (not

"other expenses"); and (2) the monthly statements expressly define "delinquency expenses" as "'third-party expenses such as property inspection fees.'" 2015 WL 9177662, at *1. The court thus found that plaintiffs' fraudulent-concealment theory was "unsubstantiated." *Id.* at *4 n.5.

To be clear, Citi does not contend that Plaintiff is bound by the *Stitt* court's factual finding. But *Stitt*'s findings illustrate the need for Plaintiff to comply with Rule 9(b) by alleging facts with particularity to state a fraudulent-concealment claim. The findings also illustrate the need for Plaintiff to conduct sufficient pre-suit investigation allowing her to make allegations in good faith and with proper evidentiary support. *See, e.g.*, Fed. R. Civ. P. 11(b)(3).

Finally, to the extent that Plaintiff contends that Citi had a duty to disclose property-inspection fees as a separate line item in its monthly statements, the Complaint does not allege facts supporting such a duty. Plaintiff's fraudulent-concealment theory fails for this reason too. *See Giotta*, 2016 WL 4447150, at *7-*8 (rejecting similar duty).

### B. The Complaint Fails To State A RICO Claim Under 18 U.S.C. § 1962(d).

Count II alleges a RICO conspiracy claim under 18 U.S.C. § 1962(d). Plaintiff's failure to properly plead a section 1962(c) claim means, however, that her conspiracy charge based on the same RICO claim also fails. *See, e.g.*, *Salinas v. United States*, 522 U.S. 52, 65 (1997).

### C. The Complaint Fails To State A Claim Under The FDCPA.

"The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not." *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). "In general, a creditor is broadly defined as one who 'offers or extends credit creating a debt or to whom a debt is owed,' 15 U.S.C. § 1692a(4), whereas a debt collector is one who attempts to collect debts 'owed or due or asserted to be owed or due another.' *Id.* § 1692a(6)." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

Citi originated Plaintiff's mortgage. *See* Kane Dec., Ex. A at 1. Citi is thus a creditor, not

a debt collector, making the FDCPA inapplicable here. *See Modupe v. CitiMortgage, Inc.*, 2012 WL 5197389, at *3 (N.D. Ill. Oct. 19, 2012) (Citi "was the original lender of the loan on which Plaintiffs defaulted; thus, it is excluded from the definition of a 'debt collector' under the FDCPA"); *Kane v. Bank of Am.*, 2014 WL 4198295, at *2 (N.D. Ill. Aug. 25, 2014) (Wells Fargo was lender and thus "is not a debt collector for purposes of the FDCPA").

Even if Citi were a debt collector, Plaintiff's FDCPA claim still fails. Plaintiff alleges violations of two FDCPA provisions. Compl. ¶¶ 89-90. First, Plaintiff cites 15 U.S.C. § 1692e, which bars the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." As shown above (at 9-11), Plaintiff has not pled viable misrepresentations. Second, Plaintiff invokes 15 U.S.C. § 1692f, which bars collecting fees "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." As shown below (at 13-16), Plaintiff's mortgage expressly authorizes the challenged fees.

**D.    The Complaint Fails To State A Claim For Breach Of Contract.**

Count IV alleges that Citi breached Plaintiff's mortgage by charging for "unnecessary and unreasonable property inspections." Compl. ¶ 102. But paragraph 14 of Plaintiff's mortgage expressly allows Citi to charge Plaintiff for post-default inspections: "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, … property inspection … fees." Kane Dec., Ex. A ¶ 14.

In support of her theory, Plaintiff quotes paragraph 9 of the mortgage: "If Borrower fails to perform the covenants and agreements contained in this Security Instrument, Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." *Id.* ¶ 9 (partially quoted in Compl. ¶ 24).

Plaintiff combines that quote with the above excerpt from paragraph 14, as if they were part of the same paragraph. Compl. ¶ 24. They are not. Whereas paragraph 14 expressly authorizes property-inspection fees, paragraph 9 is silent on inspections and provides only general authority to assess fees.

Paragraph 14's specific authorization of property-inspection fees controls over the more general paragraph 9. *See Water Pipe Extension, Bureau of Eng'g Laborers' Local 1092 v. City of Chi.*, 741 N.E.2d 1093, 1101 (Ill. App. Ct. 2000) ("where two sections of a contract are in conflict, the more specific one will prevail"). Thus, *Vega* held that paragraphs 9 and 14, read together, "do not mandate a reasonableness determination" because inspection fees are *per se* reasonable. 2015 WL 1383241, at *4. "The mortgage would not list property inspection fees as an authorized charge if property inspections were not reasonable or appropriate acts under the agreement." *Id. Benner v. Bank of America*, 917 F. Supp. 2d 338, 354 (E.D. Pa. 2013), similarly held that paragraph 14 "specifically allows for property inspections" and did not impose a reasonableness requirement. And *Mendez v. Bank of America Home Loans*, 840 F. Supp. 2d 639, 656-57 (E.D.N.Y. 2012), enforced paragraph 14 in holding that plaintiff "has no plausible claim that the inspection fees … were in violation of any express terms of his actual mortgage."

Even if paragraph 9 governed, courts have repeatedly held that there is nothing unreasonable about charging delinquent borrowers for monthly property inspections. In *Walker v. Countrywide Home Loans*, 121 Cal. Rptr. 2d 79, 84 (Ct. App. 2002), the court addressed Countrywide's use of a computer program that "order[ed] follow-up inspections each month if the default is not cured." The court held "as a matter of law" that "[t]he cost of Countrywide's inspection, even of multiple inspections, is insignificant when compared with their utility." *Id.* at 91. "Even if an initial inspection reveals that the home continues to be occupied and maintained,

a lender has legitimate reasons to reinspect the property every 30 to 60 days thereafter." *Id.* "The status and ability of a borrower unable to make monthly loan payments is uncertain and could conceivably change from month to month. Such a borrower might be unable to maintain the property and is less likely to occupy the property than a borrower current on a loan." *Id.* at 92.

Indeed, some mortgage investors have **required** servicers to conduct periodic inspections when borrowers are in default. For instance, *Walker* noted that Freddie Mac required an initial inspection within 45 to 59 days of default, and that "[i]nspections continue every month thereafter until satisfactory repayment arrangements have been made." *Id.* at 84.

*Walker* thus held that there is nothing "unfair" about "charging delinquent borrowers with the actual cost of performing property inspections." *Id.* at 82. Other courts have reached the same conclusion. *E.g.*, *Benner*, 917 F. Supp. 2d at 354; *Majchrowski v. Norwest Mortg., Inc.*, 6 F. Supp. 2d 946, 964-66 (N.D. Ill. 1998). The result should be the same here.

In addition to alleging that property-inspection fees were unreasonable under paragraph 9, Plaintiff complains about purportedly "unnecessary" inspections at least 30 times.[3] But "reasonableness" and "necessity" standards "are not interchangeable." *Stitt III*, 2015 WL 9177662, at *5. And nothing in Plaintiff's mortgage imposes a "necessity" requirement for inspection fees. Like Plaintiff's "other expenses" theory (*supra* at 11), Plaintiff apparently bases her "necessity" theory on allegations taken from other complaints. The borrower in *Vega* made the same error, "mistakenly argu[ing] someone else's mortgage" because her counsel "decided to reuse a previously filed complaint" involving a mortgage that imposed a necessity requirement— even though the *Vega* plaintiff's mortgage required only that fees be "reasonable." 2015 WL 1383241, at *2-*3. "There is no legal principle that allows the Court to pull demanding standards

---

[3] Compl. ¶¶ 2, 4, 6, 8, 27, 29, 38, 42, 44, 46, 53, 54(a), 54(b), 54(d), 62, 65, 67, 68, 69, 70, 71, 75, 85, 94, 95, 100, 102, 106(a), 106(f), 119.

out of thin air and add them to a written contract between two parties." *Id.* at *4.

Plaintiff also asserts that Citi breached the mortgage by purportedly violating "HUD guidelines" governing property inspections. Compl. ¶ 106(c). Indeed, Plaintiff relies heavily on HUD guidelines throughout the Complaint (*id.* ¶¶ 9, 31-34, 36, 39-40, 47, 71, 101, 103), even incorporating HUD's purported requirements in her proposed class definitions. *Id.* ¶ 49.

"The law is clear—an alleged violation or breach of [investor guidelines] does not give rise to any cause of action." *Vega v. Ocwen Fin. Corp.*, 2015 WL 3441930, at *4 (C.D. Cal. May 28, 2015), *appeal pending*, No. 15-55885 (9th Cir.); *accord McKenzie v. Wells Fargo Bank*, 931 F. Supp. 2d 1028, 1044 (N.D. Cal. 2013) ("federal courts have uniformly concluded" that borrowers cannot enforce servicing guidelines); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360-62 (5th Cir. 1977) (rejecting private cause of action under "HUD Handbook").

Regardless, Plaintiff's reliance on HUD guidelines is misplaced because Plaintiff never alleges that HUD insures her mortgage. HUD's handbook "provides procedural standards that must be followed *when servicing an FHA/HUD-insured mortgage*."[4] Thus, "HUD designed the Handbook for HUD-approved mortgagees in servicing HUD-insured home mortgages." *Roberts*, 556 F.2d at 360. Plaintiff cannot allege that her mortgage is FHA/HUD insured because her $4 million mortgage exceeds the FHA/HUD limit of $625,000.[5] Thus, even if HUD borrowers could enforce HUD guidelines, Plaintiff lacks standing to do so.

Finally, Plaintiff alleges that Citi breached an implied covenant of good faith and fair dealing in the mortgage—e.g., by using an automated system to order property inspections.

---

[4] HUD Single Family Housing Policy Handbook § 4330.1, Sec. 1-2 (emphasis added) (available at http://portal.hud.gov/hudportal/documents/huddoc?id=43301c1HSGH.pdf).
[5] HUD Press Release No. 15-156, *FHA Announces New Loan Limits To Take Effect January 1st* (Dec. 9, 2015) (available at http://portal.hud.gov/hudportal/HUD?src=/press/press_releases_media_advisories/2015/HUDNo_15-156).

Compl. ¶ 106. The implied covenant is not "an independent cause of action," however, and it does not "permit a party to enforce an obligation not present in the contract." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013). Rather, it merely is "an aid in construing a contract." *Id.* Because the mortgage does not obligate Citi to (for example) use any particular method to order inspections, Plaintiff's implied-covenant theory fails to support a claim.

### E. The Complaint Fails To State A Claim For Fraud Or Under The CFA.

Plaintiff appears to base her common-law fraud and Consumer Fraud Act claims on the same allegations underlying her RICO claim. *See* Compl. ¶¶ 108-24. Like RICO, the Consumer Fraud Act "is 'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'" *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). Rather, "a consumer-fraud claim under the statute requires something more than a garden-variety breach of contract." *Id.* Even "a 'widespread' or 'systematic' breach of contract does not suffice to state a claim for consumer fraud." *Id.* at 400. The "same basic reasoning" applies to common-law fraud claims, which require more than "just a reformulation of the contract claim." *Id.* at 401. Thus, to state a claim for common-law or statutory fraud, Plaintiff must allege fraud "distinct from the alleged breach of a contractual promise." *Id.* at 400-01. For reasons stated above, Plaintiff's theory that Citi "implicitly" misrepresented that her mortgage authorized the challenged fees is merely a repackaged breach-of-contract claim. Plaintiff's theory thus cannot support a common-law or statutory-fraud claim.

In addition, common-law fraud and the Consumer Fraud Act each require a false statement of material *fact*. *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287, 1290 (Ill. App. Ct. 2013). As *Stitt IV* found, "the implicit misrepresentation at issue is of law, not fact." 2016 WL 5815491, at *3; *see supra at* 9-10. "The terms and legal effect of a contract are not concealed facts," so "openly taking a position on the interpretation of legal documents, even

if erroneous, is not a deception or deceptive trade practice." *Randazzo*, 104 F. Supp. 2d at 954.

Plaintiff's fraudulent-concealment theory also cannot support a common-law or statutory-fraud claim, for reasons discussed above (at 11-12).

Finally, a common-law fraud claim requires reliance. *Avon Hardware*, 998 N.E.2d at 1287. The Complaint alleges that Plaintiff relied on Citi's "monthly statement in accepting charges and fees listed thereon." Compl. ¶ 113. Because the Complaint does not allege that Plaintiff actually paid the fees, however, she could not have relied on Citi's monthly statements.[6]

## III. If The Complaint Is Not Dismissed, The Class Allegations Should Be Stricken.

Plaintiff seeks to represent a nationwide class of borrowers "who have gone into delinquency on a mortgage serviced by [Citi] and were assessed fees for default-related property inspections while they were residing therein, without [Citi] attempting to contact the mortgagor during the previous thirty days to ascertain status of occupancy or risk of abandonment, continuing through the date of final disposition of this action." Compl. ¶ 49. Plaintiff also seeks to represent a subclass of Northern District of Illinois residents. *Id.*

Rule 23(d)(1)(D) allows courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons." As this Court has explained, "'sometimes the complaint will make it clear that class certification is inappropriate.'" *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). "If the plaintiff's class allegations are facially and inherently deficient … , 'a motion to strike class allegations … can be an appropriate device to determine whether the case will proceed as a class action.'" *Id.*; *see Hill v. Wells Fargo*

---

[6] *Stitt I* declined to dismiss plaintiffs' state-law fraud claim at the pleading stage, citing allegations (later proved false) that Citi marked up the cost of property inspections. 942 F. Supp. 2d at 960-62. As the court later explained, it allowed plaintiffs' fraud claim to proceed "chiefly based upon plaintiffs' allegation that Citi fraudulently inflated the cost of inspection fees assessed to delinquent borrowers and in some instances charged them for inspections that never occurred." *Stitt V*, 2016 WL 5815832, at *2. There are no such allegations here.

*Bank*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ("[T]he court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23."). Because the Complaint makes clear that class certification is inappropriate, the class allegations should be stricken if the Complaint survives dismissal in whole or in part.

### A.  The Putative Classes Do Not Satisfy Rule 23(a).

Under Rule 23(a)(2), Plaintiff must demonstrate "questions of law or fact common to the class." The Supreme Court has explained that Rule 23(a)(2)'s "commonality" requirement "is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "'What matters to class certification … is not the raising of common questions—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (emphasis in original). "'Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id.*

As *Stitt III* held in denying certification of similar classes, "the validity of a property inspection charge is an individual inquiry." 2015 WL 9177662, at *5. First, resolving that question starts with the terms of the mortgage. But as Plaintiff suggests (Compl. ¶ 8), mortgages differ. "Some mortgages impose a standard of reasonableness or appropriateness, while others impose a standard of necessity before allowing fees such as property inspections. These standards are not interchangeable." *Stitt III*, 2015 WL 9177662, at *5; *see Vega*, 2015 WL 1383241, at *3, *5 ("The term reasonable is quite broad" while "necessary" is more "demanding"). "This alone defeats commonality" because a fact-finder would have "to evaluate Citi's behavior based on at least two separate standards." *Stitt III*, 2015 WL 9177662, at *5.

Second, Plaintiff relies on HUD guidelines. Even if Plaintiff could enforce HUD guidelines, guidelines differ by investor and over time. *Compare, e.g.*, *Walker*, 121 Cal. Rptr. 2d

19

at 84 (describing Freddie Mac and Fannie Mae guidelines) *with* Compl. ¶¶ 32-34 (describing HUD guidelines). Thus, if servicing guidelines are relevant, they only exacerbate the different standards governing Plaintiff's claims. *See Burton v. Nationstar Mortg., LLC*, 2014 WL 5035163, at *10, 18 (E.D. Cal. Oct. 8, 2014) (denying certification of class alleging that servicer breached mortgage modifications where "the Court would be required to evaluate" "varying [investor] guidelines in place at the various times throughout the class period").

Third, once the governing standard is identified, a fact-finder would have to apply that standard to each borrower's facts. "There is no doubt that inspections to determine the condition of the mortgaged property may be 'necessary to protect the value of the Property.'" *Mann v. Chase Manhattan Mortg. Corp.*, 2002 WL 32157516, at *5 (D.R.I. Mar. 7, 2002). And each borrower's facts are unique. Plaintiff's class definition itself implicates individualized issues, excluding borrowers whom Citi "attempt[ed] to contact … during the previous thirty days to ascertain status of occupancy or risk of abandonment." Compl. ¶ 49. Determining whether borrowers fit within that definition requires individual loan file review to determine whether Citi attempted to contact borrowers within 30 days of conducting an inspection and, if so, whether Citi's attempted communication was for the purpose of ascertaining the borrower's "occupancy or risk of abandonment."

Plaintiff also must show that her claims are "typical" of the class claims, and that she will "adequately" represent the class. Fed. R. Civ. P. 23(a)(3)-(4). Plaintiff cannot do so. First, the class definitions incorporate HUD's purported requirement that Citi assess inspection fees only after attempting to contact borrowers. Compl. ¶ 49; *see id.* ¶ 9. As noted above (at 16), Plaintiff does not and cannot allege that her $4 million mortgage is FHA/HUD-insured. The standard that Plaintiff attempts to invoke in her class definitions thus could not apply to her mortgage, making

Plaintiff both atypical and an inadequate representative of borrowers with HUD loans.

Second, an Illinois court found that the Michaels engaged in "false or misleading" conduct in claiming that their home was a church subject to a religious-use exemption. *Armenian Church of Lake Bluff*, 956 N.E.2d at 489. The court noted, for example, that a "photograph of the exterior of the subject property which was submitted to the Department [of Revenue] in support of the exemption application showed an equal-sided cross installed prominently on an exterior wall" in the Michaels' home. *Id.* at 486. But the court noted that the "cross had been drawn onto the photograph with a marker and did not physically exist at the time." *Id.* This further detracts from Plaintiff's adequacy. *See Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990).[7]

## B. The Putative Classes Do Not Satisfy Rule 23(b).

In addition to satisfying Rule 23(a), Plaintiff "must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Plaintiff has not done that here.

Rule 23(b)(1) permits certification if prosecuting separate actions would risk either (a) "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or (b) "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Plaintiff primarily

_____

[7] Citi reserves its right to seek joinder of George Michael as a necessary party under Fed. R. Civ. P. 19 because Mr. Michael signed the Note. *See Stone v. Washington Mut. Bank*, 2011 WL 3678838, at *15 (N.D. Ill. Aug. 19, 2011). Indeed, Mr. Michael was originally the named plaintiff in this case, suggesting that he has an interest in the outcome of the litigation. In raising this issue, Citi notes that the Seventh Circuit affirmed an FDIC order permanently barring Mr. Michael from working in the banking industry. *Michael v. F.D.I.C.*, 687 F.3d 337 (7th Cir. 2012). The court found that Mr. Michael exhibited "personal dishonesty," misrepresenting facts and concealing others in applying for a business loan. *Id.* at 350-52. And in affirming a civil penalty, the court affirmed the administrative law judge's finding that Mr. Michael "flagrantly disregarded" banking laws, "abused" his management role "to further [his] financial interests," and provided "inconsistent testimony" that "evidenced a lack of good faith" *Id.* at 355.

seeks damages. *E.g.*, Compl., Prayer for Relief ¶¶ B-D. But Rule 23(b)(1) "'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). Plaintiff also seeks unspecified "other relief, including injunctive and/or declaratory relief." Compl., Prayer for Relief ¶ F. But any injunction barring Citi from assessing a particular inspection fee is claimant-specific and thus would not prevent Citi from acting consistently in other cases.

Rule 23(b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." It does not authorize certification "when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 544 U.S. at 361. Plaintiff thus cannot pursue damages under Rule 23(b)(2).

Plaintiff's request for injunctive relief cannot be certified under Rule 23(b)(2) either. Rule 23(b)(2) requires that claimants have "cohesive" interests so that "the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000). The putative classes are not cohesive because, for reasons cited above, Citi's "conduct cannot be evaluated without reference to the individual circumstances of each plaintiff." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1036 (8th Cir. 2010). Moreover, "Rule 23(b)(2) applies only when a single injunction" would "provide relief to each member of the class," not "when each individual class member would be entitled to a *different* injunction." *Dukes*, 564 U.S. at 360. Again, any injunction prohibiting Citi from assessing a particular property-inspection fee is necessarily claimant-specific.

Under Rule 23(b)(3), class actions may proceed only where "questions of law or fact

common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiff cannot satisfy these "predominance" and "superiority" requirements.

Even if Plaintiff could identify a common issue, "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). If "factual proof unique to each individual" must be examined to establish liability as to each putative class member, then Plaintiff "cannot satisfy the Rule 23(b)(3) predominance standard." *Id.* at 624. The individual issues cited above far outweigh any common issue that might exist.

Moreover, the alleged nationwide class implicates the laws of 50 states as to Plaintiff's non-RICO claims. "No class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *Id.* at 1018. Given the need to review each borrower's loan file and differing state laws, "an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." Fed. R. Civ. P. 23(b)(3), 1966 Adv. Comm. Note.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, or alternatively, the Complaint's class-action allegations should be stricken.

Dated: October 13, 2016                    Respectfully submitted,

                                           CITIMORTGAGE, INC.


                                           By: /s/ Debra Bogo-Ernst
                                           Lucia Nale
                                           Debra Bogo-Ernst
                                           Stephen J. Kane
                                           Michael H. Bornhorst

MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Counsel to Defendant CitiMortgage, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for Northern District of Illinois' Electronic Filing System on October 13, 2016.

/s/ Debra Bogo-Ernst