IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN MICHAEL, on behalf of herself and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 16-cv-07238 |
| CITIMORTGAGE, INC. and SAFEGUARD PROPERTIES MANAGEMENT, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT SAFEGUARD'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Safeguard Properties Management, LLC, ("Safeguard") through its attorneys, submits its memorandum of law in support of Safeguard's motion to dismiss all counts of Plaintiff's Amended Complaint (Dkt. 10) and states as follows:

## INTRODUCTION

1. This lawsuit (Dkt. 10) arises out of a pending foreclosure action in the Illinois State Court, Lake County, Illinois, 2014 CH 1431. It also arises from the bankruptcy action filed in 2010 by former plaintiff, George Michael. (In Re: George Michael, U.S. Bankruptcy Court, ND Ill., No. 10-43637) because the real estate, which is the subject of the foreclosure action, was affected by the automatic stay provision of the bankruptcy court. George Michael was discharged as a debtor under Chapter 11 on June 25, 2013 and CitiMortgage, Inc. was granted relief from the automatic stay by court order dated February 19, 2014. (10 B 43637, Dkt. 339)

2. This Federal court action, as a practical matter, is a merely another legal maneuver or tactic in the overall litigation over the property.

3. The purpose of Safeguard's Motion to Dismiss is to demonstrate that the

allegations of the Amended Complaint are not based upon any factual matters that support a meritorious claim for relief. Stripped of its legal conclusions and speculation, a fair reading of the pleading reveals that Safeguard was asked by the lender, CitiMortgage, to perform monthly property inspections of the real estate. Safeguard did not communicate with Plaintiff and Safeguard did not enter into any contracts with plaintiff. Plaintiff's theory that Safeguard engaged in a RICO "enterprise" or "conspired" with CitiMortgage has no factual or legal basis.

4. The entire pleading does not state a cause of action under any of the purported legal theories.

5. The foremost feature of this case is that it is a copycat class action lawsuit that is based upon a Federal Court case in the Northern District of California, entitled *Stitt v. CitiMortgage*, No. 12 C 3892. All of the allegations of the Amended Complaint mirror the allegations of *Stitt*, with the change of just a few words. One important difference, however, is that the plaintiffs in *Stitt* did not sue the property preservation company, which was Safeguard.

6. The result in *Stitt* after four years of litigation was that all of the legal theories that are used in this copycat class actions were rejected by the federal judge in *Stitt*. See, list of *Stitt* decisions in Dkt. 30, p. 6.

7. Although plaintiffs in *Stitt* never joined Safeguard as a defendant in the *Stitt* lawsuit, plaintiffs specifically named Safeguard as one of the vendors who performed property inspections. Consequently, the favorable rulings in the *Stitt* case and the *Stitt* court's legal rationale are equally applicable to this Defendant, Safeguard, as they are to CitiMortgage.

8. The copycat nature of the pleading probably explains why plaintiff's attorney did not include Safeguard in any of the factual allegations of the Third to Sixth Causes of Action:
- Third Cause of Action – Fair Debt Collection Practices Act (p. 20);
- Fourth Cause of Action – Breach of Contract (p. 21);

2

- Fifth Cause of Action – Fraud (p. 24); or
- Sixth Cause of Action – Illinois Consumer Fraud and Deceptive Practices Act (p. 25)

9. In any event, Plaintiff has no meritorious basis to include Defendant Safeguard in those counts because Safeguard was not a debt collector, Safeguard did not have a contract with plaintiff, and Safeguard did not communicate with plaintiff, so Safeguard could not have made any alleged misrepresentations to plaintiff to support fraud or consumer fraud.

10. Finally, because this lawsuit appears to be based upon the *Stitt* litigation and because the major thrust of the lawsuit relates to purported violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") for the same reasons as in *Stitt*, Safeguard joined in and adopted the factual and legal arguments presented in CitiMortgage's motion to dismiss.

## LEGAL STANDARD

11. The legal standard for this Court's review of the motion to dismiss if found in Dkt. 30, p. 11-12.

## LAW AND ARGUMENT

12. In addition to joining in CitiMortgage's motion to dismiss this motion, Safeguard includes additional points and authorities for this Court's consideration as they pertain to this Defendant, Safeguard.

## **PLAINTIFF FAILS TO ALLEGE A RICO CAUSE OF ACTION**

13. Plaintiff's First Cause of Action (Dkt. 10, p. 14) and Second Cause of Action (Dkt. 10, p. 19) are purportedly brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

14. "Congress passed RICO in an effort to combat organized, long-term criminal activity." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir.2007). To that end, "RICO makes it 'unlawful for any person employed by or associated with any enterprise engaged

in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.' " *Boyle v. United States,* 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009) (quoting 18 U.S.C. § 1962(c)). To establish a civil violation of Section 1962(c), a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496–97, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 399 (7th Cir.2009).

15. CitiMortgage's motion to dismiss explains the many ways in which Plaintiff's Amended Complaint fails to meet the pleading standards for establishing a RICO violation (Dkt. 30, p. 6-12), including:

- Plaintiff Lacks Standing to Assert a RICO Claim – No payment of inspection fees
- No Association-in-Fact "Enterprise"
- No Distinct "Conduct" of an Enterprise
- No Racketeering Activity
- No Scheme to Defraud Involving Use of Fraudulent Misrepresentations
- No Scheme to Defraud Involving Use of Fraudulent Concealment
- No "Conspiracy" under 18 U.S.C. Sec. 1962(d) for Insufficient RICO Claim under Sec. 1962(c)

16. In the two cases below, the courts thoroughly discuss the inadequacy of the Plaintiff's copycat RICO allegations that are directed against Safeguard as the property preservation company. Safeguard was specifically named in the allegations, even though Safeguard was not joined as a defendant. The courts' favorable rulings on defendant's motions to dismiss are instructive.

17. In *Stitt v. Citibank, N.A.,* No. 12-CV-03892-YGR, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), the court examined Plaintiffs' contention that that Safeguard, by performing property inspections, participated in an "enterprise" that was formed for an illegal "common

purpose" under RICO. The court noted that "aside from these conclusory allegations" the pleading was "notably lacking in the way of substantive allegations" concerning the third-party enterprise members, specifically mentioning Safeguard. The court concluded that, at most, plaintiffs only alleged that "Safeguard acted pursuant to a service contract." The court stated:

> Plaintiffs' allegation that Safeguard "conducted the inspections according to policies and procedures developed collaboratively with Citi," does not render plausible plaintiffs' claim that the members of the Citi Enterprise associated for the alleged, and fraudulent, common purpose. (*See* FAC ¶ 102.) Even construing the facts alleged in the light most favorable to plaintiffs, **the FAC alleges only that Safeguard acted pursuant to a service contract**: Citi's system orders inspections of properties from Safeguard; Safeguard conducts the inspections according to policies and procedures it developed with Citi; Safeguard generates a report for each inspection; Safeguard then generates data for Citi. (FAC ¶¶ 101, 102.) **Such allegations do not render plausible plaintiffs' theory** that the members of the enterprise "associated together for the common purpose" of executing and charging for "unnecessary" property inspections or that together, the enterprise members "devised a scheme to defraud borrowers." (FAC ¶¶ 45, 97.)
> 2015 WL 75237, at *5 (Emphasis Added)

18. Further, the *Stitt* court found that "Safeguard acted pursuant to their ordinary contractual obligation to perform inspections" under the plaintiffs' legal theories, which was insufficient to allege a RICO violation. The court held:

> ". . .plaintiffs do not allege facts to support their claim that Safeguard shared Citi's purpose of performing unnecessary property inspections, or that the non-Citi entities have in any way participated in the development of a scheme to achieve this end. As stated above, the FAC alleges merely that as stated above, the FAC **alleges merely that Safeguard acted pursuant to their ordinary contractual obligation to perform inspections** when Citi sent a request. Accordingly, as the Court noted in its prior Order, plaintiffs FAC remains deficient in terms of factual allegations that show that the non-Citi enterprise members *associated together* with the Citi defendants *for* the alleged common purpose. *Stitt v. Citibank*, 942 F.Supp.2d 944, 958 (N.D.Cal.2013).
> 2015 WL 75237, at *6 (Emphasis Added)

19. A similar finding and dismissal was rendered in <u>Cirino v. Bank of Am., N.A.</u>, No. CV 13-8829 PSG MRWX, 2015 WL 3669078, at *5 (C.D. Cal. Feb. 10, 2015). The *Cirino* court

5

agreed with the *Stitt* decision and found that the vendors, such as Safeguard, were not liable under RICO for performing property inspections at the request of a lender. It held:

> Plaintiff alleges that the vendors associate with Defendants in two ways—(1) the vendors conduct the inspections according to policies and procedures developed collaboratively with Defendants;[2] and (2) vendors send information about the results of the inspections to Defendants. *See id.* However, neither of these facts supports that the vendors associated with Defendants for the common purpose of conducting *unnecessary or unreasonable* property inspections; **instead, the facts only suggest that the vendors associated with Defendants to conduct the property inspections requested (electronically and without elucidation) by Defendants**. *See Stitt*, 2015 WL 75237 at *4–6 (addressing an identical situation and concluding that a vendor had not associated with Citibank for the purpose of conducting *unnecessary* property inspections). This factual relationship does not plausibly suggest that the vendors shared the alleged fraudulent purpose of the enterprise; rather, the ordering and conducting of unnecessary inspections to defraud borrowers was a solo operation, an operation intended and desired only by Defendants.
> 2015 WL 3669078, at *5 (Emphasis Added)

20.  For all of the above reasons as well as the arguments set forth in CitiMortgage's motion to dismiss and memorandum in support, Plaintiff has failed to sufficiently plead facts that establish a cognizable enterprise, a pattern of racketeering activity, and RICO injury.

## NO FACTUAL ALLEGATIONS BROUGHT AGAINST SAFEGUARD IN CAUSES OF ACTION THREE TO SIX

21.  Plaintiff's Causes of Action, Three to Six, are simply devoid of any allegations that Safeguard performed any activity to support those legal theories, so this Court must dismiss all those causes of action.

### Third Cause of Action - Fair Debt Collection Practices Act

22.  In the Third Cause of Action - Fair Debt Collection Practices Act ("FDCPA") (Dkt. 10, p. 20), Plaintiff alleges that CitiMortgage is a "debt collector" (Dkt. 10, p. 20, para. 91). Plaintiff does not allege that Safeguard was in violations of any of the provisions of the FDCPA.

23.  Further, plaintiff alleges that "by attempting to collect improper and unnecessary

property inspection fees as heretofore described" CitiMortgage violated several sections of the FDCPA. (Dkt. 10, p. 21, para. 94) Plaintiff alleges that "CitiMortgage's implicit and patent representations that these inspection fees" were violations. (Dkt. 10, p. 21, para. 95) Plaintiff does not include Safeguard in these allegations or these activities.

24. Safeguard states that all of the above allegations are legal conclusions that are unsupported by factual matter; in addition to being an untrue distortion of an ordinary industry practices; i.e. order a property inspection.

25. Property inspections are necessary to protect a valuable asset, such as a $4 million home. Plaintiff never alleges any facts to support the conclusion that the $13.50 charged by Safeguard to perform a property inspection at a $4 million loan was unfair or an unreasonable practice.

26. The Seventh Circuit has stated that FDCPA only applies to debt collectors and only when their conduct is undertaken "in connection with the collection of any debt." See, *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003)

27. Allegations in plaintiff's Amended Complaint, if construed that Safeguard is a debt collector for the purposes of § 1692f(6), are conclusory rather than factual and therefore are insufficient. See, *Jeffries v. Wells Fargo Bank, NA*, No. 1–cv–5889, 2011 WL 5023396, at *5 (N.D.Ill. Oct. 19, 2011) (finding plaintiff's allegations that "all defendants are debt collectors" to be conclusory) and *Evan Law Grp. LLC, Taylor*, 2010 WL 5135904, at *2 (N.D.Ill. Dec. 9, 2009) (quoting *Twombly*, 550 U.S. at 555) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation").

28. As CitiMortgage argues, Plaintiff is simply seeking to turn a garden-variety contract dispute under state law into a violation of Federal law under the FDPCA, which is

7

prohibited as expressed stated by the Seventh Circuit in *Olvera v. Blitt & Gaines,* 431 F.3d 285, 287 (7th Cir. 2005) (plaintiff's alleged interpretation of Illinois Interest Act did not result in violate the FDCPA). The Seventh Circuit has repeatedly held that the "FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.,* 794 F.3d 871, 875 (7th Cir. 2015) (court rejected attempt by plaintiff to transform § 1692f of the FDCPA into an enforcement mechanism for the arbitration provision in his credit card agreement.)

29. Even under the most liberal standard for evaluating pleadings, Plaintiff's pleading is insufficient because it simply does not mention Safeguard, so there is not factual support of a cause of action under the FDCPA.

### Fourth Cause of Action – Breach of Contract

30. In the Fourth Cause of Action – Breach of Contract (Dkt. 10, p. 21), Plaintiff does not make a specific allegation that she entered into a contract with Safeguard. By comparison, Plaintiff alleges that "CitiMortgage breached the mortgage contract of Plaintiff" (Dkt. 10, p. 22, para. 102).

31. Further, Plaintiff makes no allegations to support a theory that Safeguard had an implied covenant of good faith and fair dealing.

32. None of the Plaintiff's allegations pertaining the contract or the breach of the contract are directed to Defendant, Safeguard, so the pleading does not support a cause of action against Safeguard under this legal theory.

### Fifth Cause of Action – Fraud

33. In the Fifth Cause of Action – Fraud (Dkt. 10, p. 24), Plaintiff alleges that CitiMortgage communicated with Plaintiff. (Dkt. 10, p. 24, para. 110-112) and that Plaintiff

relied upon the "expense itemizations shown on their monthly statements" (Dkt. 10, p. 25, para. 113).

34. Plaintiff does not allege that Safeguard communicated with Plaintiff, that Safeguard made any misrepresentations to Plaintiff, or Plaintiff relied upon the representations of Safeguard.

35. Plaintiff fails to allege necessary elements of the cause of action for common law fraud, e.g. *Connick v Suzuki Motor Co., Ltd.,* 174 Ill 2d 482 at 496, 675 NE2d 584 at 591 (1996) as well as fails to plead factual matter with specificity and particularity as required by the Federal Rules.

### Sixth Cause of Action – Illinois Consumer Fraud and Deceptive Practices Act

36. In the Sixth Cause of Action – Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Dkt. 10, p. 25), Plaintiff alleges that charging "default-related property inspection fees" is the unfair act under the ICFA.

37. As in the common law fraud claim in the Fifth Cause of Action, Plaintiff does not allege that Safeguard communicated with Plaintiff, that Safeguard made misrepresentations to Plaintiff, or Plaintiff relied upon the representations of Safeguard. e.g. *Connick v Suzuki Motor Co., Ltd.,* 174 Ill 2d 482 at 501, 675 NE2d 584 at 593 (1996).

38. Consequently, Plaintiff fails to state a cause of action against Safeguard as well as fails to plead factual matter with specificity and particularity as required by the Federal Rules.

### IN ALTERNATIVE, CLASS ALLEGATIONS SHOULD BE STRICKEN UNDER RULE 23

39. Safeguard adopted the factual and legal arguments of CitiMortgage to strike the class allegations under Rule 23(d)(1)(D) pertaining to "allegations about representation of absent persons." The court should use its authority to remove the class allegations from this Amended

9

Complaint because it is clear that this Plaintiff and her husband former plaintiff, George Michael, are unable to satisfy Rule 23.

40.  In addition to CitiMortgage's arguments, the Seventh Circuit has stated that adequate representation is the foundation of all representative actions and embodies the due process requirement that each litigant is entitled to his day in court. *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1121 (7th Cir.1979)

41.  Because a class action judgment would bind absent class members, strict enforcement of rules is vitally necessary in order to ensure that protection to absent parties which due process requires. Absent class members be adequately represented in order to prevent a collateral attack on the judgment.

42.  In determining whether a named plaintiff adequately represents the absentee class members' interests, the Court must inquire into the adequacy of the named plaintiffs' counsel and named plaintiffs' interests in protecting the interests of absentee class members. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986)

43.  A serious question of Plaintiff Susan Michael's fitness as a Class Plaintiff is raised by the facts reported in the court in *Armenian Church of Lake Bluff v. Department of Revenue*, 2011 IL App (1st) 102249 at Para. 5, 956 N.E.2d 479 at 482

> At a deposition in 2008, Susan Michael stated she "really [did not] know" about the purchase, because her husband "handle[d] all" the family's property matters, including deeds, construction, mortgages, and taxes, and would obtain her signature on documents as needed.
> . . .
> Susan Michael found it daunting to continue traveling to St. Gregory after she moved from 1340 Longvalley Road in Glenview, Illinois, to the subject property in Lake Bluff in 2004, because she is physically limited by secondary progressive multiple sclerosis and advanced osteoarthritis.

44.  From a logistics standpoint, there is a serious question as to whether plaintiff's

counsel, Anthony Klytta, can adequately represent a class when he does not have an email registered with the Clerk's Office. Using email and other technology tools should be considered by this Court as a factor. Further, it is unclear whether plaintiff's attorney is a member of the General Bar or Trial Bar because an inquiry on the Clerk webpage results in a "no Records" response.

45. In sum, Plaintiff and her husband former plaintiff, George Michael, as well as her attorney are unable to satisfy Rule 23 and so the Class Allegations should be stricken.

## CONCLUSION

46. Plaintiff's use of the copycat complaint in an effort to expand the underlying foreclosure litigation into Federal Court is not well founded. Joining the property preservation company, Safeguard, who was not sued in *Stitt* or *Cirino*, does not aid plaintiff's cause.

47. A fair reading of the allegations of Plaintiff's Amended Complaint supports a finding that plaintiff has not stated any cause of action against Safeguard under any legal theory.

WHEREFORE, Defendant, Safeguard Properties Management, LLC, requests this Court to enter an order of dismissal with prejudice of the Plaintiff's Amended Complaint, or in the alternative, strike the class allegations and for any other relief this Court deems just.

Respectfully submitted,

s/ Gary W. Fresen
Gary W. Fresen - ARDC # 3125065
Panos T. Topalis – ARDC #6202025
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 2550
Chicago, IL 60606
(312) 201-6400
gwfresen@tribler.com
pttopalis@tribler.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Safeguard's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint was served upon:

Anthony Klytta
Klytta & Klytta
1645 Birchwood
Des Plaines, IL 60018
(773) 727-2225
***(via regular U.S. Mail)***

Debra Bogo-Ernst
Stephen J. Kane
Mayer Brown LLP
71 S. Wacker Dr.
Chicago, IL 60606
(312) 782-0600
dernst@mayerbrown.com
skane@mayerbrown.com
courtnotification@mayerbrown.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 14th day of October, 2016, with proper postage prepaid.

s/ Gary W. Fresen
an Attorney