# EXHIBIT B

O

# United States District Court
# Central District of California

| | |
|---|---|
| MARY LOU VEGA, individually and on behalf of other members of the public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION; OCWEN LOAN SERVICING, LLC,<br><br>Defendants. | Case № 2:14-cv-04408-ODW(PLAx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [29]** |

## I. INTRODUCTION

Plaintiff Mary Lou Vega brings this class action against Defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLC"). Vega's allegations question the propriety of property-inspection fees levied against her and the purported class made up of borrowers in default on their home loans. Before the Court is Defendants' Motion to Dismiss. (ECF No. 29.) In the kitchen-sink Motion, Defendants seek dismissal of all six of Vega's claims on several grounds. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.[1] (ECF No. 29.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Defendants are residential mortgage servicers that, according to Vega, focus their business on non-prime, credit-impaired borrowers. (Compl. ¶ 28.) In the Complaint, Vega challenges regular property-inspection fees levied by Defendants against Vega and a purported class defined as "[a]ll residents of the United States of America who had a loan serviced by [Defendants], and whose accounts were assessed fees for property inspections at any time, continuing through the date of final disposition of this action." (*Id.* ¶ 81.) Vega also defines a subclass made up of California residents. (*Id.*)

At the time a home loan is issued, borrowers are informed in the promissory note and security instrument (a mortgage or deed of trust) that a loan servicer will pay for "whatever is reasonable or appropriate" to protect the note holder's interest in the property. (*Id.* ¶¶ 52–53.) The costs of these "default-related services"—including property inspections—are added to the borrower's debt. (*Id.* ¶¶ 54–55.) But Vega alleges that property-inspection fees are regularly charged to borrowers in default, regardless of whether a property inspection is reasonable or necessary. (*Id.* ¶¶ 58–61.) In her case, Vega alleges that from November 2012 until October 2013, Defendants assessed fees for a total of 12 property inspections on her property, despite the fact that she maintained regular contact with Defendants and occupied the property throughout that time period. (*Id.* ¶ 71.)

According to Vega, Defendants utilize an automated system to order property inspections and assess fees to borrowers in default, and that no meaningful review of the necessity of these property inspections occurs. (*Id.* ¶¶ 60–62.) Vega alleges that this practice does not comport with the Fannie Mae Single Family Servicing Guide, which interprets Fannie Mae's mortgage notes. (*Id.* ¶¶ 56, 118–19.) The guide states that "charging a delinquent borrower's account for monthly property inspections generally would not be a permissible practice." (*Id.*) But Vega alleges that Defendants' automated system orders property inspections based solely on a

2

borrower's delinquency. (*Id.* ¶¶ 2, 49, 58–59, 61.) The result of these "indiscriminate" property inspections is that borrowers already in default sink deeper into debt as the fees stack up. (*Id.* ¶¶ 64–67.)

On June 6, 2014, Vega filed the class-action Complaint against Defendants, bringing a total of six claims for (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (3) RICO conspiracy, 18 U.S.C. § 1962(d); (4) violations of the Rosenthal Fair Debt Collections Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788 *et seq.*; (5) unjust enrichment; and (6) fraud. (ECF No. 1.) Defendants filed the instant Motion to Dismiss on September 29, 2014. (ECF No. 29.) A timely Opposition and Reply were filed. (ECF Nos. 38, 42.) The Motion is now before the Court for decision.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B. Fraud**

Fraud pleadings are subject to an elevated standard, requiring a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means that fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Accordingly, when suing more than one defendant, a plaintiff cannot "merely lump multiple defendants together" but rather must differentiate the allegations and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65.

## IV. DISCUSSION

Defendants move to dismiss all of Vega's claims on several grounds. The Court first addresses Defendants' arguments applicable to all of the claims and then turns to the sufficiency of the allegations with respect to each of Vega's claims.

**A. Arguments Applicable to All Claims**

Defendants characterize Vega's allegations as being premised on a theory of nondisclosure. According to Defendants, Vega's claims are based on Defendants' alleged concealment or failure to disclose the frequency of the property inspections. But Defendants argue that all of Vega's claims fail because the property-inspection fees were disclosed in her monthly statements. Vega was apprised of the frequency of the fees because she was being assessed the fees every month. (Mot. 5–8.) Thus,

Defendants argue that Vega's claims should be dismissed because the entire theory of her case—concealment and nondisclosure—fails on the face of the Complaint. (*Id.*)

However, the Court finds that Defendants are mischaracterizing Vega's allegations. The fraudulent conduct alleged in the Complaint is that Defendants concealed the true nature of the property-inspection fees. (Compl. ¶¶ 2–3, 10, 48–59, 58–59, 61, 98.) Vega is not challenging Defendants' ability to assess property-inspection fees, nor is Vega alleging that Defendants concealed the frequency of the fees. Instead, the thrust of Vega's allegations is that by assessing the fees on a monthly basis, Defendants were misrepresenting the necessity of the fees. The Complaint challenges the manner in which Defendants order and charge homeowners for property inspections—by using an automated system that orders property inspections on a monthly basis regardless of the individual circumstances of the borrower and property at issue. (*Id.* ¶¶ 49, 51–56, 58–59, 61.)

The Court finds that Vega's claims are not premised on a theory of nondisclosure about the frequency of the property inspections, but rather on a theory of misrepresentation about the nature and necessity of the fees. Therefore, the Court **DENIES** Defendants' Motion with respect to the nondisclosure argument. *Cf. Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa Oct. 23, 2013) (granting class certification in an action challenging a bank's policy of indiscriminately ordering property inspections for delinquent mortgage loans).

**B. UCL Claim**

Defendants next challenge Vega's UCL claim for lack of statutory standing and failure to state a claim under the unfair, fraudulent, and unlawful prongs of the UCL.

**1. Standing**

To have standing to sue under the UCL, a plaintiff must show "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury* . . . ." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321–22 (2011); *see also* Cal. Bus. & Prof. Code § 17204 (requiring injury in fact and lost money or property).

Here, Defendants argue that Vega lacks standing under the UCL because she has not alleged an economic injury. Vega does not allege that she has made any payment of the property-inspection fees—or any payment at all—to Defendants since they began servicing her loan in 2012. (Mot. 8:15–26.) On the other hand, Vega argues that she has properly alleged an injury in fact because her economic injury is the assessment of an invalid debt. (Opp'n 5:24–7:21.)

Defendants rely on a handful of district court decisions for their position, but the Court finds these cases unpersuasive and easily distinguishable from the case at hand. *See Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. Jan. 7, 2013) (finding that unpaid property-inspection fees did not constitute an "ascertainable loss of money or property" for purposes of standing under Pennsylvania law as opposed to California law); *Serna v. Bank of Am., N.A.*, No. 11-cv-10598-CAS(JEMx), 2012 WL 2030705, at *5 (C.D. Cal. June 4, 2012) (finding no UCL standing where plaintiff sought a home loan modification on an undisputed debt before foreclosure proceedings commenced). Instead, the Court finds that Vega has alleged economic injury under the UCL because the property-inspection fees improperly increased the debt securing her property. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (holding that closing a credit card account and losing the credit extended by the bank and/or keeping an account open and accepting a higher APR would result in economic injury sufficient for UCL standing). Accordingly, Vega has standing to sue under the UCL.

### 2. Unfair Prong

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code. § 17200. Defendants challenge Vega's UCL claim under all three prongs of the statute.

Defendants first contend that Vega's UCL claim fails because the assessment of monthly property-inspection fees on a borrower in default is expressly authorized in the deed of trust and the California Court of Appeal has already ruled that these fees

are not "unfair" under the UCL. (Mot. 9:16–10:27); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1175–78 (2002) (granting summary judgment in favor of a loan servicer because property inspections were not unfair under the UCL).

Defendants' reliance on *Walker* is misplaced. As Vega points out in her Opposition, the issue in *Walker* was broader than the issue presented in Vega's Complaint. (Opp'n 7:24–28.) The California Court of Appeal in *Walker* considered whether it is ever appropriate for a loan servicer to charge a delinquent borrower a property-inspection fee. 98 Cal. App. 4th at 1175–78. The answer was yes. *Id.* However, in this case, Vega is challenging the manner in which Defendants charge delinquent borrowers these fees—by automatically ordering property inspections every month on every property in default without consideration of the necessity. *See, e.g., Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1024–25 (S.D. Iowa Oct. 27, 2009) (denying a motion to dismiss the plaintiff's California UCL claim by finding that *Walker* only addressed "the imposition of property inspection fees in general" and not the manner in which the fees were charged); *Cirino v. Bank of Am., N.A.*, No. 13-cv-8829-PSG(MRWx), ECF No. 41 at 11 (C.D. Cal. Oct. 1, 2014) (finding that *Walker* does not address whether automated property-inspection practices are fraudulent and unfair).

Moreover, *Walker* was decided at summary judgment, and the reasonableness of the property-inspection fees is a factual question that cannot be decided at the motion-to-dismiss stage. *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 952 (N.D. Cal. Apr. 25, 2013) (finding that the "necessity" of property-inspection fees is a factual question that would be premature to address in a motion to dismiss); *Young*, 671 F. Supp. 2d at 1024 (stating that the reasonableness of property-inspection fees cannot be addressed without an evidentiary record).

The Court finds that Vega has adequately stated a claim under the unfair prong of the UCL.

///

7

### 3. Fraudulent Prong

Defendants also argue that Vega's UCL claim fails under the fraudulent prong for two reasons. First, Defendants once again argue that to the extent that Vega challenges the frequency in which the fees were assessed, Defendants made no misrepresentations since the fees were included in her monthly statements. (Mot. 11:11–15; Compl. ¶ 103.) Second, to the extent that Vega's UCL claim is premised on any other theory of misrepresentation, Defendants contend that the Complaint fails to meet the particularity requirements of Rule 9(b). (Mot. 11:16–28.)

The Court finds Defendants arguments unpersuasive. As discussed above, Vega is not alleging that Defendants failed to disclose the frequency of the property-inspection fees. Rather, Vega alleges that Defendants affirmatively misled borrowers by assessing fees for unnecessary property inspections. (Compl. ¶¶ 76, 98, 102–04.)

Furthermore, the Court is satisfied that the particularity requirements of Rule 9(b) have been met. In the Complaint, Vega alleges exactly why Defendants' conduct is false and misleading—using their status as large financial institutions to disguise the "true character, quality, and nature of the fees." (*Id.*) The Court finds this case distinguishable from *Kirkeby v. JPMorgan Chase Bank, N.A.*, No. 13cv377 WQH-MDD, 2014 WL 4364836, at *4–5 (S.D. Cal. Sept. 3, 2014), where the court dismissed a similar UCL claim under the fraudulent prong based on Rule 9(b)'s specificity requirements. In *Kirkeby*, the allegations involved "default-related services" in general and there were no allegations regarding the dates or frequency of Defendants' allegedly misleading statements. 2014 WL 4364836, at *4–5. But here, Vega has alleged that property-inspection fees are assessed against delinquent borrowers on a monthly basis based on an automated system used by Defendants. Defendants misled Vega and other borrowers by assessing the fees monthly without disclosing the manner in which Defendants order the inspections.

The Court finds that Vega has adequately stated a claim under the fraudulent prong of the UCL.

#### 4. Unlawful Prong

Defendants also move to dismiss Vega's UCL claim under the unlawful prong. According to Defendants, the claim under the unlawful prong is premised on California's fraud statutes, RICO, and the RFDCPA. Defendants contend that these separate claims all fail, so the UCL claim under the unlawful prong fails as well. However, as discussed below, the Court finds that Vega has adequately alleged claims for fraud and violations of RICO and the RFDCPA, so her UCL claim under the unlawful prong survives the present Motion as well.

For the reasons discussed above, the Court **DENIES** Defendants' Motion with respect to Vega's UCL claim.

### C. Fraud Claim

Defendants next move to dismiss Vega's fraud claim, mainly arguing that the claim is barred by the economic-loss doctrine because Vega alleges "nothing more than a purported breach of contract." (Mot. 12:10–13.) The economic-loss rule in California prevents parties bound by contract from suing in tort unless they allege a harm that is distinct from the harm arising out of the breached contract. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1130 (2012) ("A party alleging fraud or deceit in connection with a contract must establish tortious conduct independent of a breach of the contract itself, that is, a violation of 'some independent duty arising from tort law.'" (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004))). Here, Defendants argue that Vega's deed of trust explicitly permits "reasonable and appropriate" property-inspection fees, and Vega merely alleges that Defendants breached the terms of the deed of trust by ordering "unnecessary" property inspections. (Mot. 13:7–20.)

On the other hand, Vega contends that her fraud claim is not barred by the economic-loss doctrine because the alleged misconduct goes much further than Defendants' failure to perform a contractual promise. (Opp'n 10:25–12:6); *see also Young*, 671 F. Supp. 2d at 1034–35 (stating that similar allegations of indiscriminately

9

assessing property-inspection fees go beyond mere breach of contract and instead constitute "a systematic course of conduct to defraud mortgage borrowers").

At this stage of the litigation, the Court is satisfied that Vega's allegations go beyond a mere breach of contract and the economic-loss doctrine does not apply. Vega alleges that Defendants not only assessed unnecessary property-inspection fees against her, but that the fees against her are part of a broader scheme to profit off from all defaulting borrowers whose loans Defendants service. (*See, e.g.*, Compl. ¶¶ 64–67.) Moreover, for the same reasons discussed above with respect to the UCL claim, the Court finds that Vega has met the specificity requirements of Rule 9(b). Thus, the Court **DENIES** Defendants' Motion as to Vega's fraud claim.

**D. RICO Claims**

Defendants also challenge the sufficiency of Vega's RICO allegations, arguing that Vega lacks standing to sue under RICO and has failed to allege a valid RICO enterprise or the requisite predicate acts. Defendants also contend that Vega's RICO conspiracy allegations are insufficient.

**1. Standing**

Defendants argue that Vega lacks standing to sue under RICO for many of the same reasons discussed above in terms of the UCL claim. Since Vega has not alleged any payment of the property-inspection fees, she has not suffered an injury in fact. (Mot. 13:24–14:13.) But the Court once again disagrees, finding that the assessment of an allegedly invalid debt is sufficient to meet the injury-in-fact requirement under RICO as well. *See Rubio*, 613 F.3d at 1204.

Defendants also argue that Vega cannot allege that her harm was caused by the alleged RICO violation, citing case law discussing a third party's direct injury being passed on to the plaintiff. (Mot. 14:4–13); *Munoz v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168–69 (9th Cir. 2002). However, the Court fails to see how Vega has merely alleged a "passed-on injury" as opposed to a direct injury. The Court finds that Vega

///

has adequately alleged that her harm—the invalid debt—was caused by Defendants conduct. The Court finds that Vega has standing under RICO.

## 2. RICO Enterprise

In the Complaint, Vega alleges an associated-in-fact enterprise, which for the purposes of RICO is "a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). The requirements of an associated-in-fact enterprise are that it (1) has a common purpose, (2) is an ongoing organization, either formal or informal, and (3) associates function as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552–53 (9th Cir. 2007). Here, Vega alleges that the enterprise is made up of Defendants OFC and OLS as well as non-parties—Altisource Portfolio Solutions S.A. and "property preservation vendors." (Compl. ¶¶ 3, 109–22.)

But Defendants argue the enterprise allegations are insufficient. Defendants contend that Vega's failure to specifically identify the property-preservation vendors precludes her RICO claim based on their conduct. (Mot. 15:4–18.) Defendants also argue that Vega has lumped OFC and OLS together without specifying their individual roles in the enterprise, nor does she explain Altisource's role in the enterprise. (Mot. 15:19–16:12.)

The Court finds that Vega has sufficiently alleged an associated-in-fact enterprise under RICO. According to the Complaint, OFC, OLS, Altisource, and third-party vendors "associated together for the common purpose of indiscriminately, routinely, and repeatedly, ordering, conducting and assessing borrowers' accounts for unnecessary property inspections." (Compl. ¶ 111.) The role of each member of the enterprise is detailed in the Complaint. OFC and OLS control and direct the affairs of the enterprise and use the other members as instrumentalities to carry out the fraudulent scheme. (*Id.* ¶ 113.) Defendants' executives set the policies and procedures. (*Id.* ¶ 114.) Defendants allegedly funnel work to Altisource—a wholly

owned subsidiary of Defendants until 2009[2]—and Altisource in turn orders default-related services such as property inspections from a network of third-party vendors. (*Id.* ¶¶ 44–46.) These vendors then conduct property inspections under the direction of Defendants "without consideration for whether they are necessary." (*Id.* ¶ 114.)

There is no requirement that a RICO enterprise have a particular structure. *Odom*, 486 F.3d at 551. Nor does RICO require an enterprise to be "something more than a contract-based relationship." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 992–94 (C.D. Cal. Sept. 22, 2008) ("RICO enterprises may include entirely legitimate entities that are exploited by wrongdoers and . . . not every member of an enterprise need be a co-defendant.") The Court finds that Vega's allegations of a RICO enterprise are sufficient. *See, e.g.*, *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 942 (N.D. Cal. Apr. 25, 2013) (finding that plaintiff sufficiently alleged a RICO enterprise consisting of a bank and third-party vendors and brokers who provided default-related services "at the core of the scheme").

### 3. Predicate Acts

Defendants also challenge the sufficiency of Vega's RICO claims by arguing that Vega has failed to allege the requisite predicate acts. To the extent that Defendants characterize Vega's allegations as being based on a theory of nondisclosure, the Court has already disagreed. Vega is alleging affirmative misrepresentations on the part of Defendants—that the monthly property inspections were necessary. Defendants also argue that a mere breach of the deed of trust does not constitute a predicate act for the purposes of RICO. (Mot. 17:27–18:11.) But the Court has already found, as discussed above with respect to the fraud claim, that Vega alleges conduct that goes beyond a mere breach of contract. Instead, Vega is challenging Defendants' overall policy of indiscriminately ordering property inspections and charging borrowers the fees.

---

[2] Vega also alleges that certain individuals still own significant shares of Defendants and Altisource, and that regulators have raised concerns about self-dealing. (Compl. ¶ 37–38, 44–46.)

The Court finds that Vega has alleged the requisite predicate acts to support her RICO claims.

### 4. RICO Conspiracy

Defendants' arguments regarding the RICO conspiracy claim under 18 U.S.C. § 1962(d) are also unpersuasive. Since the Court finds that a substantive RICO violation has been alleged, Defendants' arguments in this respect fail. Also, while Defendants contend that the conspiracy allegations are merely conclusory, the Court disagrees. Vega alleges that the enterprise "was aware of the nature and scope of the enterprise's unlawful scheme, and they agreed to participate in it." (Compl. ¶ 140.) But Vega also alleges specific facts to support these allegations of knowledge and intent. For example, Vega references the Fannie Mae Single Family Servicing Guide, which states that "charging a delinquent borrower's account for monthly property inspections generally would not be a permissible practice." (*Id.* ¶¶ 56, 118–19.) Accordingly, the Court finds that Defendants' grounds for dismissal of the RICO conspiracy claim fail.

For these reasons, the Court also **DENIES** Defendants' Motion with respect to the RICO claims.

### E. RFDCPA Claim

Defendants contend that Vega's RFDCPA claim fails for four reasons, some of which the Court has already rejected.

First, Defendants argue that Vega's RFDCPA claim must be dismissed because it is premised on the alleged concealment of the frequency of the property-inspection fees. (Mot. 19:23-26.) Since the fees were assessed and listed on monthly statements that are referenced in the Complaint, Vega's alleged theory of nondisclosure necessarily fails. (*Id.*) But the Court has already addressed this theory, finding that Defendants have misconstrued the allegations in the Complaint. Vega is challenging the necessity of the fees and the manner in which property inspections are ordered, not the concealment of the frequency of the fees.

13

Defendants next argue that the RFDCPA claim should be dismissed because it is based on a breach of Fannie Mae's servicing guidelines. (Mot. 19:27–20:8.) According to Defendants, Vega lacks standing because her RFDCPA allegations relate to the enforcement of agreements between Defendants and third-party investors. (*Id.*) But Defendants are once again misconstruing the nature of Vega's claim. Vega references the Fannie Mae Single Family Servicing Guide to support its theory that Defendants' practice of indiscriminately ordering property inspections on properties in default is unreasonable and violates borrowers' deeds of trust. (*See* Opp'n 20:9–21:4.) Vega is not trying to enforce an agreement between third-party investors and Defendants.

Defendants also seek dismissal of the RFDCPA claim because the assessment of the property-inspection fees is not "misleading" because the fees were authorized in Vega's deed of trust. (Mot. 20:9–26.) But Vega's RFDCPA claim is not challenging Defendants' right to assess the property-inspection fees. Instead, Vega challenges the manner in which Defendants order property inspections without taking into consideration the necessity of the inspections for each property. (*See* Opp'n 23:22.) The Court's distinction from the *Walker* case above is instructive on this point.

Finally, Defendants move to dismiss the RFDCPA claim as being barred by the statute of limitations. (Mot. 20:27–21:3.) The RFDCPA has a one-year statute of limitations. Cal. Civ. Code § 1788.3(f). According to Defendants, since Vega alleges that property-inspection fees were assessed beginning in November 2012 and the Complaint was not filed until June 2014, her RFDCPA claim is time-barred. But, as Vega points out in her Opposition, she alleges in the Complaint that Defendants knowingly and actively concealed, denied, and misled Vega as to the necessity of the property inspections. (Opp'n 23:24–28; Compl. ¶¶ 75–79.) Thus, if established by the evidence at a later stage, the statute of limitations should be tolled until Vega discovered the violation. In addition, even without tolling, Vega's RFDCPA claim is not time-barred because property-inspection fees were assessed through October 2013,

which is within the one year limitations period. (*See* Opp'n 23:28–24:5.) At this stage of the litigation, the statute of limitations does not bar Vega's RFDCPA claim.

The Court **DENIES** Defendants' Motion with respect to the RFDCPA claim.

### F. Unjust Enrichment

Lastly, Defendants move to dismiss Vega's unjust-enrichment claim. Defendants raise a number of grounds for dismissal of this claim, but the Court need address only one. Vega has not alleged any payment to Defendants of the property-inspection fees; thus, Defendants have not been unjustly enriched at Vega's expense. (*See* Mot. 22:7–22:12.) The Court distinguishes this issue from its discussion of standing under the UCL and RICO above. While Vega has alleged an injury in fact under those statutes—the assessment of an invalid debt—she cannot obtain relief under a claim for unjust enrichment because Defendants have not yet received a benefit from their alleged conduct. No payment of the property-inspection fees has been alleged, so there is nothing for Defendants to disgorge. *See McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004) (stating the elements of a claim for unjust enrichment). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Vega's unjust-enrichment claim. Since Vega has not indicated in her Opposition that payment of at least some of the property-inspection fees was merely an omission from the Complaint, the unjust-enrichment claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

///
///
///
///
///
///
///
///

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 29.) The Court denies the Motion as to all claims except the unjust-enrichment claim, which is **DISMISSED WITHOUT LEAVE TO AMEND**. Defendants' shall answer the Complaint within **14 days** of the date of this Order.

**IT IS SO ORDERED.**

December 1, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**