IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Susan Michael, on behalf of herself and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 16-CV-07238 |
| v. | ) ) | Hon. Amy St. Eve |
| CitiMortgage, Inc. and Safeguard Properties Management, LLC, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 10, 2016, Plaintiff Susan Michael brought the present Complaint against Defendants CitiMortgage, Inc. ("CitiMortgage") and Safeguard Properties Management, LLC ("Safeguard"), collectively, "Defendants," alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(c)-(d), violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and violations of Illinois law, including breach of contract, fraud, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS §505/2 *et seq*. Both CitiMortgage and Safeguard moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). CitiMortgage, alternatively, moved to strike the class allegations. For the following reasons, the Court grants Defendants' motions to dismiss.

**BACKGROUND**

Plaintiff is a homeowner residing in the Village of Lake Bluff in the Northern District of Illinois. (R. 10, Second Am. Compl. ¶ 13.) Defendant CitiMortgage, the mortgage lending

1

group of Citigroup, Inc., is a corporation organized under the laws of the State of New York with its principal place of business in O'Fallon, Missouri. (*Id*. ¶ 14.) Defendant Safeguard is a mortgage field services vendor headquartered in Valley View, Ohio and organized under the laws of the State of Ohio. (*Id*. ¶ 15.) Defendants administered and serviced Plaintiff's mortgage. (*Id*. ¶ 1.)

Plaintiff alleges that CitiMortgage delegates default-related services, primarily property inspections, to its vendor Safeguard. (*Id*. ¶ 16.) Safeguard conducts default-related property inspections on the majority of CitiMortgage's loan portfolio, including on Plaintiff's home. (*Id*. ¶ 16.) Plaintiff alleges that CitiMortgage uses computer software programs to administer and manage its mortgage loans, including to order default-related inspections of Plaintiff's home and the homes of others in the proposed class. (*Id*. ¶ 17.) Safeguard uses a compatible computer program to generate default-related work order updates and invoices, which Plaintiff alleges are not made available to borrowers. (*Id*. ¶ 18.) Plaintiff claims that CitiMortgage's loans are automatically managed by its computer program in accordance with predetermined guidelines. (*Id*. ¶ 19.) If a loan in the system is past due, for example, the computer program will automatically schedule a "drive-by" property inspection. (*Id*.) After the program receives a work order update that the inspector has completed the property inspection, the program automatically charges a fee to the borrower, which is reflected in the monthly mortgage statement mailed to the borrower. (*Id*. ¶ 20.) Plaintiff alleges that CitiMortgage's system is programmed to order default-related property inspections at predetermined intervals. (*Id*. ¶ 21.)

In addition, Plaintiff claims that her deed of trust ("Security Instrument") and promissory note ("Note") govern the actions CitiMortgage may take pursuant to her mortgage contract. (*Id*. ¶ 22-23.) Plaintiff's Security Instrument provides as follows:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Propery[.] . . Lender may charge Borrower for services performed in connection with Borrower's default, including, but not limited to, attorneys' fees, property inspections and valuation fees.

(*Id*. ¶ 24.) The Security Instrument provides that any service fees assessed by the lender shall become additional debt and shall bear interest at the Note rate from the date of disbursement. (*Id*. ¶ 26.) Plaintiff alleges that paragraph 9 of the mortgage contract does not permit inspection fees to be charged to borrowers' accounts for unnecessary[1] or unreasonable inspections. (*Id*. ¶ 27.)

According to Plaintiff, Defendants unlawfully assessed service fees for unreasonable default-triggered inspections,[2] which consisted of inspectors quickly driving past the property or up an adjoining driveway. (*Id*. ¶¶ 28-29.) Plaintiff further alleges that these unnecessary inspections were intended to charge default-related service fees as often as possible to as many accounts as possible. (*Id*. ¶ 29.) Plaintiff claims that Defendants concealed and "camouflaged" the property inspection fees by failing to provide sufficient information on borrowers' mortgage statements to determine whether the inspections were reasonable and necessary. (*Id*. ¶ 30.) Plaintiff further claims that Defendants "implicitly represent[ed] that the inspection fees were reasonable and necessary" and were consistent with the mortgage contract, which was false and misleading. (*Id*. ¶ 71.)

Plaintiff also asserts that Defendants' policy of conducting unnecessary inspections is contrary to the guidelines in the U.S. Department of Housing and Urban Development ("HUD")

---

[1] Plaintiff admits that she erroneously alleged that Defendants' inspections were "unnecessary," even though Plaintiff's mortgage contract only requires that the inspections be reasonable. (R. 47, Pl.'s Resp. to Defs.' Mot. to Dismiss 18.)

[2] Plaintiff does not allege that she actually paid any of the service fees.

3

Handbook,³ which require that a lender attempt to contact the borrower when a mortgage becomes delinquent to determine if the property is vacant or abandoned. (*Id.* ¶¶ 31-32.) The HUD guidelines state that when a property is occupied, a lender can conduct inspections if within the past 30 days: (1) there have been no mortgage payments; (2) the lender has been unable to contact the borrower to determine occupancy status; and (3) there is an increased risk of abandonment of the property. (*Id.* ¶ 33.) Defendants conducted inspections regardless of whether there had been mortgage payments in the preceding 30 days and irrespective of the occupancy status of the home. (*Id.* ¶ 34.)

Plaintiff alleges that Defendants conducted more than sixty drive-by inspections of her residence over a period of five years, all while Plaintiff and her family occupied the home. (*Id.* ¶ 35.) Defendants' work order updates provide no indication that inspectors ever observed any indication that the home was abandoned. (*Id.*) Nevertheless, Defendants charged Plaintiff an inspection fee for every inspection. (*Id.* ¶ 36.) Plaintiff alleges that Defendants' default-related inspections are designed to maximize the service fees generated as long as the borrowers' mortgage remained delinquent and regardless of whether the inspections are necessary. (*Id.* ¶¶ 37-38.) Plaintiff claims that fees for default-related services could add thousands of dollars to borrowers' mortgages, all with interest accruing, making it increasingly difficult for borrowers to pay off their loans because part of any mortgage payment is applied to any default-related service fees. (*Id.* ¶¶ 41-42.) These unnecessary fees force borrowers deeper into default, damage their credit scores, and reduce the equity they have in their properties. (*Id.* ¶¶ 43-45.) Plaintiff alleges that the thousands of borrowers that were assessed default-related service fees

---

³ Plaintiff admits in her Response that her mortgage was not insured by HUD and asks the Court to disregard references to the HUD guidelines. (R. 47, Pl.'s Resp. to Defs.' Mot. to Dismiss 18.)

form a class of similarly situated individuals, sharing common questions of law or fact in the adjudication of culpability and the assessment of damages.  (*Id*. ¶¶ 47, 53.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted."  *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014).  Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor."  *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).  In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to or referenced in the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims.  *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

Beyond the requirements of Rule 12(b)(6), Rule 9(b) requires all allegations of fraud or mistake to be "stated with particularity."  *Borsellino v. Goldman Sachs Gro., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing Fed. R. Civ. P. 9(b)).  This requires a party to describe the "who, what, when, where, and how of the fraud."  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (citation omitted).  Applying this standard to a RICO claim, the plaintiff must, at a minimum, "describe the two predicate acts of fraud with some specificity and state the time,

place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 658 (7th Cir. 2015), *reh'g denied*, 807 F.3d 839 (7th Cir. 2015), and *cert. denied*, 136 S. Ct. 1607 (2016). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## ANALYSIS

In its Motion to Dismiss, CitiMortgage claims that the Court must dismiss Plaintiff's Complaint in its entirety because the Complaint does not allege that Plaintiff provided Defendants with notice and an opportunity to cure any errors before suing as required by their mortgage contract. Plaintiff's mortgage states:

> Neither Borrower nor Lender may commence . . . any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(R. 31, Decl. of Stephen Kane, Ex. A ¶ 20.)

In response, Plaintiff argues that she did provide notice and attaches an affidavit setting forth the factual details of the mailed notice and a copy of the letter that Plaintiff allegedly sent to CitiMortgage on May 11, 2016. (R. 47, Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 2 and Ex. 3.) Plaintiff, citing *United States v. Midwest Generation, LLC*, 781 F. Supp. 2d 677, 693 (N.D. Ill. 2011), argues that it may oppose Defendants' motion to dismiss with additional facts—the notice letter sent to CitiMortgage—asserted by affidavit because those facts are consistent with the allegations in her Complaint. In that case, however, the court allowed the plaintiff to provide

additional facts relating to the statute of limitations, an affirmative defense that the court explained "need not be anticipated by a complaint." *Id.* Here, Plaintiff is instead attempting to amend her Complaint to include key facts regarding a condition precedent to litigation that she does not dispute she completely excluded from the Complaint. Plaintiff may not amend her Complaint in this way and is limited to the facts in her Complaint, which do not include any allegations that she provided notice to CitiMortgage as required by her mortgage contract.[4] *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (holding that plaintiff could not alter his claims due to "the axiomatic rule that a plaintiff may not amend his complaint in his response brief").

Several courts have dismissed claims, including RICO and FDCPA claims, against mortgage lenders relating to property-inspection fees where, as here, the borrower-plaintiffs failed to plead compliance with the notice-and-cure provisions in mortgage contracts. In *Giotta v. Ocwen Fin. Corp.*, No. 15-CV-00620-BLF, 2016 WL 4447150, at *5-6 (N.D. Cal. Aug. 24, 2016), for example, the court dismissed the plaintiffs' RICO, FDCPA, statutory-fraud, and common-law fraud claims against a loan servicer at the motion to dismiss stage because the plaintiff failed to allege compliance with a notice-and-cure provision identical to that in this case.

---

[4] Even if the Court permitted Plaintiff to amend her Complaint or converted this motion into one for summary judgment on the notice issue, the alleged notice letter Plaintiff provided is plainly deficient because she sent it to the wrong address. Plaintiff's mortgage states: "Any notice to Lender shall be given by delivering it or by mailing it first class mail to Lender's address stated herein. . ." (R. 31, Decl. of Stephen Kane, Ex. A ¶ 15.) The mortgage also states: "Lender's address is 1 Court Square, Floor 20, Long Island City, NY 11120." (*Id.* ¶ 1.) Plaintiff, however, allegedly sent her notice letter to a St. Louis address. Plaintiff's failure to use the designated address would also require dismissal of all her claims because use of an incorrect address does not constitute notice. *See, e.g.*, *Page v. JPMorgan Chase Bank*, No. 4:15-CV-367-A, 2016 WL 3023303, at *3 (N.D. Tex. May 24, 2016 (finding that letter does not "constitute notice" because it "reflects that the address to which it was sent is different from the property address shown in the deed of trust"); *Hickerson v. Wells Fargo Bank*, No. 3:11-CV-0812-LRH-WGC, 2012 WL 194616, at *2 (D. Nev. Jan. 12, 2012) (dismissing claim because plaintiffs "were on notice that all attempts to cure their default should be directed to . . . a specific mailing address"); *In re Phelps*, 186 B.R. 655, 658 (Bankr. E.D. Va. 1995) ("Notice sent to an incorrect address is insufficient.").

The court explained that the plaintiffs' "claims f[e]ll squarely within the ambit of the notice-and-cure provision" because they "ar[o]se from the property inspections . . . charged to Plaintiffs pursuant to the terms of the Deed of Trust." *Id*. at *4. As a result, the court found, citing notice-and-cure language identical to that at issue here, that all of the plaintiffs' claims "ar[o]se[ ] from the other party's actions pursuant to this Security Instrument," and accordingly dismissed the complaint in its entirety. *See also Hill v. Nationstar Mortg. LLC*, No. 15-60106-CIV, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015) (dismissing RICO, breach-of-contract, and unjust-enrichment claims related to collection of property-inspection fees because plaintiffs' "claims are entirely based on their mortgage contract"); *Johnson v. Countrywide Home Loans, Inc.*, No. 1:10CV1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (applying identical notice-and-cure provision and dismissing TILA, RESPA, FDCPA, and FCRA claims because "*all* of Plaintiff's allegations arise from actions taken pursuant to the Deed of Trust") (emphasis in original); *LaSalle Bank Nat. Ass'n v. Mudd*, No. 03 C 1785, 2003 WL 22048158, at *2 (N.D. Ill. Aug. 29, 2003) (dismissing foreclosure claim because plaintiff "failed to comply with the notice and cure provision" of the mortgage guaranty contract).

Here, the Court dismisses Plaintiff's claims because she failed to allege compliance with the notice provision in her contract. As Plaintiff herself stated in her Complaint, "it is the Mortgage and Note that suppl[y] any purported legal justification or contractual warrant to charge . . . for alleged property inspections." (Second Am. Compl. ¶ 20.) Indeed, it is the mortgage contract itself that allows CitiMortgage to charge delinquent borrowers for property inspection fees, and Plaintiff bases her claim on language found in paragraph 9 of the mortgage contract stating that CitiMortgage may "do and pay for whatever is reasonable or appropriate to protect [its] interest in the property. (*Id*. ¶ 24; *see also* R. 31, Decl. of Stephen Kane, Ex. A ¶

8

14.) As a result, like in *Giotta*, *Hill*, and the other cited cases, all of Plaintiff's claims, even her RICO and FDCPA claims, arise out of and are entirely based on the property fees that were charged pursuant to her mortgage contract, and she failed to comply with the notice requirements of that contract. Accordingly, the Court grants CitiMortgage's motion to dismiss.

CitiMortgage is the only Defendant alleged to have entered into a contract or communicated with Plaintiff. Safeguard is alleged to be liable as CitiMortgage's co-conspirator. (Second Am. Compl. ¶ 31.) "Aider and abettor liability requires actual commission of the underlying tort." *Giotta*, 2016 WL 4447150, at *6 (citations and quotations omitted) (dismissing claim against mortgage services vendor because claims were dismissed against mortgage lender due to failure to satisfy notice requirement). Because the Court is dismissing Plaintiff's claims against CitiMortgage, it also dismisses her claims against Safeguard.

## CONCLUSION

For these reasons, the Court grants Defendants' Rule 12(b)(6) motions to dismiss Plaintiff's Complaint without prejudice.

**Dated:** April 3, 2017

                                         **ENTERED**

                                         **AMY J. ST. EVE**
                                         **United States District Court Judge**